CITY OF CLIFTON, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. STANLEY ZWEIR, FRANK F. STAUDT AND STEPHEN GOCELJAK, JR., DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND CHARLES F. HAHN, DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND WILLIAM HOLSTER, DEFENDANT-RESPONDENT, AND JAMES J. TALAMINI, INTERVENOR-RESPONDENT.

Argued October 10, 1961—Decided January 22, 1962.

*Mr. John G. Dluhy* argued the cause for appellants and cross-respondents Zweir, Staudt and Goceljak.

*Mr. Edward F. Johnson* argued the cause for respondent and cross-appellant City of Clifton.

*Mr. William N. Gurtman* argued the cause for respondent and cross-appellant Hahn (*Messrs. Gurtman and Schomer,* attorneys).

*Mr. Israel Friend* argued the cause for respondent Talamini (*Messrs. Friend and Friend,* attorneys).

No appearance was made or brief filed for respondent Holster.

The opinion of the court was delivered by

HALL, J. The Municipal Planning Act of 1953, *N. J. S. A.* 40:55–1.1, *et seq.,* applicable to all municipalities,

provides for local planning board membership in four categories:

Class I — "mayor," to serve a term corresponding to his official tenure;

Class II — "one of the officials of the municipality to be appointed by the mayor," whose term "shall terminate with the term of the mayor appointing him";

Class III — "a member of the governing body to be appointed by it" for a term corresponding to the appointee's official tenure;

Class IV — "a specified number of other citizens of the municipality to be appointed by the mayor" to serve for designated periods. (*N. J. S. A.* 40:55–1.4.)

This case concerns the problem of where the appointing authority resides for classes II and IV and the identity of the class I member in a municipality governed by the 1923 manager form of government law. *R. S.* 40:79–1, *et seq.*

The problem arises because of a maze of further statutory provisions immensely complicating the seemingly simple language just quoted. They are found within the planning act itself, included in that general statute in an effort to adapt this membership and appointment section to all the various forms of local government existing in this State. They are also found in the manager law, where efforts to insulate that special form of municipal charter from inconsistent or inappropriate provisions of general governmental law open the door to claims of conflict and supremacy. The various possibilities have resulted in the parties' contending, respectively, that the appointing authority is vested in the mayor, the manager and the municipal council as the governing body and that the Class I member is the mayor and the manager. The Law Division decided in favor of the manager on both facets. 66 *N. J. Super.* 500 (1961). The ensuing appeals of those asserting the other positions were certified on our own motion while pending in the Appellate Division.

These other pertinent legislative provisions can well be sketched at this point in order that the whole statutory

picture may be in mind at the outset. We should begin with the definition section of the planning act, which says that "'mayor' means *the elected official* who serves as *the chief executive* of the municipality, whatever his official designation may be." *N. J. S. A.* 40:55-1.2 (emphasis supplied). On its face the definition does not quite fit either the manager or the mayor under the manager form of government.

Under the manager law the manager is "the chief executive and administrative officer" of the municipality, *R. S.* 40:79-2 and 40:82-4(a), with particular power to "[a]ppoint and remove all department heads and all other officers, subordinates and assistants for whose selection or removal no other method is provided in this subtitle." *R. S.* 40:82-4(d). This accords with the fundamental theory of the manager form of government—a distinct separation of policy determination and legislative power, which resides in the elected municipal council, *R. S.* 40:81-9, 10, 13 and 16, from administrative and executive functions, which repose in the professional manager, *R. S.* 40:82-4. *National Municipal League, Model City Charter* xv-xvi (*5th ed.* 1941); *Final Report of the N. J. Commission on Municipal Government* 2, 23-24 (1949); *Rhyne, Municipal Law* 8-9 (1957). See *Ware v. Board of Commissioners of Cape May City,* 120 *N. J. L.* 48 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 545 (*E. & A.* 1939); *Lohsen v. Borough of Keansburg,* 4 *N. J.* 498, 506 (1950); *Townsend v. Pequannock Township,* 47 *N. J. Super.* 294, 298 (*Law Div.* 1957); *Edelstein v. City of Asbury Park,* 12 *N. J. Super.* 509, 513 (*App. Div.* 1951).

The manager is not, however, an "elected official," at least in common parlance. He is "appointed" by the council to serve at its pleasure, subject to the proviso that after three years he may not be removed except for cause following hearing. *N. J. S. A.* 40:81-11 and 40:82-3.

The mayor, on the other hand, while an "elected official," in the sense that he is one of the popularly elected council

members chosen for the post at the organization meeting by a majority vote of that body, *R. S.* 40:81–7, cannot be considered "the chief executive," at least in the way that term is used in the manager act. His powers and duties, only those expressly conferred by that law, *R. S.* 40:81–8, are so limited that he is in reality no more than a presiding and ceremonial officer. As far as appointments are concerned, the law specifically provides that "[i]n any act or ordinance a provision conferring the power of appointment [except as to members of the board of education and trustees of the public library] or other power upon the mayor or other executive head of the municipality shall be construed as meaning the municipal manager in a municipality" so governed. *R. S.* 40:82–5.

The manager law contains no provision dealing with agencies, like the planning board, which have policy-making functions or *quasi*-judicial powers, as it does with respect to executive and administrative departments, boards and officers. See *R. S.* 40:81–10.[1] Indeed, the law was enacted before the original planning act of 1930, *R. S.* 40:55–1, *et seq.,* or the comparable zoning enabling act of 1928, *R. S.* 40:55–30, *et seq.*[2]

It may be further noted that the council is given express power of appointment only as to the manager, assessors, auditor, treasurer, clerk, attorney and advisory boards having authority limited to the making of investigations and recommendations. *N. J. S. A.* 40:81–11; *R. S.* 40:81–13 and 40:81–16.

---

[1] In this respect the 1923 manager act is to be contrasted with the council-manager plans authorized by the Optional Municipal Charter Law (Faulkner Act) adopted in 1950. *N. J. S. A.* 40:69A–1, *et seq.* There the council "may provide for the manner of appointment of * * * any planning board, zoning board of adjustment or personnel board * * *" *N. J. S. A.* 40:69A–89.

[2] The latter act, which followed the standard state zoning enabling act recommended by the U. S. Department of Commerce in 1926, specified that "[t]he governing body or board of public works shall provide for the appointment of a board of adjustment * * *." *N. J. S. A.* 40:55–36.

Other sections of the manager act which deal with the relation of that statute to other laws should be mentioned. Every municipality so governed is authorized generally to exercise "all powers delegated to such municipality by any other general or special law, not inconsistent with the powers enumerated herein," *R. S.* 40:79–4. It is particularly specified that general law applicable to all municipalities (*R. S.* 40:42–1, *et seq.*, which includes the chapter relating to planning and zoning, *R. S.* 40:55–1, *et seq.*) shall be applicable in manager communities "whenever not inconsistent with the provisions" of the manager act itself, *R. S.* 40:79–5. See also *R. S.* 40:80–10. The same thought is further expressed strongly in negative fashion by this language: "No law, general or special, or any provision thereof, affecting the government of any municipality governed by this subtitle and contrary to or inconsistent with the provisions hereof, shall apply to such municipality * * *," with an exception not here pertinent. *N. J. S. A.* 40:80–12.

It is important, too, to throw into the scales the prior legislative development of the 1953 planning act provisions relating to board membership and appointment. The original 1930 statute had identical language in the section prescribing the composition and naming of the board, *R. S.* 40:55–3, except that the Class I member was described as "mayor, ex-officio." However, the definition of "mayor," set forth in *R. S.* 40:55–1, was vastly different. It then read: " 'Mayor' means *the chief executive* of the municipality, whether the official designation of his office be mayor, *manager* or otherwise." (Emphasis supplied).[3] This defi-

---

[3] The 1930 act was patterned after the standard planning enabling act, recommended by the U. S. Department of Commerce in 1928. There the definition of "mayor" is identical with our 1930 law and the composition of the board and manner of appointment of all but the citizen members are much the same. The appointment of the latter, however, is given to the mayor as so defined only if he is an elected official, otherwise to such officer as the governing body may designate in the creating ordinance.

nition was, in turn, radically changed by the extensive amendment of the original act accomplished through *L. 1948, c. 464.* By section 1 thereof, it was made to read: " 'Mayor' means *the chief executive* of the municipality, whatever his official designation may be *except that in the case of municipalities governed by municipal council and municipal manager the term 'mayor' shall not mean the 'municipal manager' but shall mean the mayor of such municipality."* (Emphasis supplied) Thus it remained until the 1953 act repealed all earlier legislation, *N. J. S. A.* 40 :55–1.28, and recast the definition in the form quoted at the beginning of this opinion.

To get to the specifics of the case before us—Clifton adopted the manager form of government in 1934. In 1943 it established a planning board by ordinance under the authority of the 1930 planning act. The ordinance provided—and it has never been amended—for the appointment of Class II and IV members by the mayor, in the language of that law, despite and without mention of the statutory definition of that term by which, as has been said, "mayor" meant "manager." The ordinance also followed the statutory language in designating the Class I member to be the "mayor, ex-officio." Since the passage of the 1953 act the Clifton board has continued and been governed by that statute. *N. J. S. A.* 40 :55–1.27.

Until November 1, 1960, appointments of the Class II and IV members of the board had always been made by the mayor, regardless of the particular planning law definition in force at the time.[4] Apparently the mayor also always served as the Class I member. Accordingly, defendant Mayor Zweir, in October 1960, appointed the city tax collector, defendant Staudt, as the Class II member and defendant Goceljak as a Class IV member to replace, re-

---

4 It is, of course, elementary that a local ordinance provision contrary to the enabling legislation can have no validity. 3 *McQuillin, Municipal Corporations*, §§ 1271, 1273 (3d ed. 1949). No claim based on the ordinance is asserted here.

spectively, defendant Holster, the city manager, who was the Class II member by appointment of a prior mayor whose term of office had ended some time previously, and defendant Hahn whose term as a citizen member was about to expire. On November 1, the municipal council, on advice of the law department, claimed the appointing power was in it and adopted resolutions appointing Holster and Hahn to succeed themselves in the memberships they then occupied. All four were sworn into office.

The city (in reality the council) then filed the present complaint against the four appointees and the mayor seeking a judgment to declare "who has the right of appointment * * * and * * * which, if any, of the said aforementioned appointments were proper and effective * * *." It asserted no position and did not raise the matter of the proper occupant of the Class I membership. The answering pleadings of the appointees alleged the validity of their respective appointments (except that of Holster whose answer, like the city's complaint, asserted no claim and merely asked for a declaration in the same language as the city's prayer for judgment; he maintained this neutral position in the trial court and does not participate here). The joint answer of Mayor Zweir, Staudt and Goceljak (actually a cross-claim) also asserted that city manager Holster "claims or may claim" that he is the Class I member and that he holds the power of appointment of Class II and IV members and sought a determination that he was not entitled to the membership or the appointing authority. Staudt and Goceljak also cross-claimed against Holster and Hahn, respectively, seeking their ouster. Talamini, a citizen taxpayer, was permitted to intervene and filed a cross-claim against all other parties demanding the ouster of all four appointees and a declaration that the sole power to appoint Class II and IV members resided in the manager. There being no factual issue, the city moved for summary judgment, as did Messrs. Zweir, Staudt and Goceljak. Apparently the city first took a

positive position at this point, contending, as it does here, that the power of appointment rests in the municipal council. The trial court treated the matter as if it were submitted by all parties for decision on stipulated facts.[5] Its judgment decreed that the mayor unlawfully usurped the Class I membership, which belonged to the manager, set aside the appointments of Messrs. Staudt, Goceljak, Holster and Hahn to the Class II and IV memberships and declared that the power of appointment thereof resided in the manager.

The basis of the trial court's decision as to the appointing authority for Class II and IV members was that the manager is both "an elected official" in legal contemplation and, under the manager law, "the chief executive of the municipality" and therefore met the two-fold criterion of "mayor" in the planning act definition. Since the result was in harmony with what the judge conceived to be the applicable appointment provisions of the manager law, *R. S.* 40:82–4 and 5, he was not confronted with any problem of conflict between the two statutes. The judge found that the manager was elected largely because he concluded that the definition in the 1953 law was intended to carry the same meaning as that in the original 1930 act, 66 *N. J. Super.*, at *pp.* 508–509, where, it will be recalled, specific language was used to indicate beyond any question that "mayor" meant "manager" in a municipality so governed.

The unfortunate fact is that the intervening 1948 amendment, previously mentioned, which exactly reversed the 1930 definition and said that "mayor" meant "mayor" in a manager community, was not called to the trial court's attention. All briefs here are premised on the same error.

---

[5] No party has raised any question of procedural irregularity. So we deal only with the merits, on the basis that all issues decided below were properly raised by the cross-pleadings and tried by consent or without objection, *R. R.* 4:15–2, and are not to be understood as expressing any view on any adjective matter.

The amendment was not brought to our notice until one counsel advised us by letter after oral argument.[6] All other counsel have since expressed their views as to its bearing and effect. It does have decisive effect and requires us to make a completely new evaluation of the entire problem.

The first aspect of a new look is to ascertain what the Legislature intended the latest planning act definition to mean, in the context of that statute alone. Certain elements, already referred to, are obvious. In the original 1930 version, the Legislature most clearly intended the manager to have the appointing power. By the 1948 amendment, it was made equally clear that the Legislature had changed its mind and specifically gave the authority instead to the mayor in the manager form of government. The amendment was not contained in the original bill, which dealt with an enlargement of local planning powers, but was added during the progress of the measure through the Legislature. See 1948 Assembly Minutes, pp. 524–525. There is no extrinsic clue to the reason for the change, but that need not concern us for it was certainly within the realm of unquestionable legislative choice. Of significance with respect to both enactments is the further obvious fact that the Legislature did advert to and provide specially for the appointing authority in manager municipalities.

■ In considering the recast definition found in the 1953 planning act, we conclude that there was no intention to alter the effect of the 1948 definition as far as the appointing authority in a manager community is concerned. We are satisfied that it amounted to no more than an effort —somewhat inept—to shorthand the language of the man-

---

6 Counsel and the trial court should not, however, be criticized for ignorance of its existence. Neither the text of amendments to the 1930 act nor particularized reference thereto has been included in the annual pocket parts to New Jersey Statutes Annotated since the adoption of the 1953 law repealing all planning legislation that had gone before. (The appropriate bound volume was printed in 1940.)

ager exception in the 1948 amendment by substituting the "elected official" terminology. The convincing evidence of this is found, as pointed out in the trial court opinion (66 *N. J. Super.*, at *pp.* 508–509, though mistakenly utilized to equate the 1953 language to the 1930 definition because of lack of knowledge of the 1948 amendment), in the report of the legislative advisory commission, which drafted the new section, and the contemporary writing of experts in the field, all of which indicated no change was intended. It therefore once more follows that the Legislature continued to have in mind and make particular provision for the holder of the power of appointment where the manager form of government prevailed.

We feel that this intent is so certainly established by the course of development that it overshadows the fact, as earlier suggested, that the shorthanded 1953 definition, taken alone and literally, does not accurately describe either the manager or the mayor under the manager plan. The Legislature was confronted with the task of selecting language which could be applied in all of the 20 or more forms of municipal government in use in this State. No wish to omit the manager form can possibly be imputed. The new language, in light of the history, indicates choice of the reasonable criterion that municipal board members who perform policy-making and *quasi*-judicial functions, rather than mere administrative duties, should be appointed by an official who came into government by vote of the people at large and who must stand for re-election at the end of a definite term. This would be the unquestionable result under all except the manager form and we think it was equally meant here. We cannot agree with the trial court's conclusion (66 *N. J. Super.*, at *pp.* 509–510) that the manager is an "elected" official. Such questions are always to be determined by ascertainment of the legislative intent in the particular context, no matter what judicial language or theory may be used to express the resolution of that fundamental query. The cases relied on below, principally

*Reid v. Gorsuch,* 67 *N. J. L.* 396 (*Sup. Ct.* 1902) and *Vreeland v. Pierson,* 70 *N. J. L.* 508 (*Sup. Ct.* 1904), are therefore not decisive in the present setting.

While it is the manager and not the mayor who is in the technical sense of the manager law the "chief executive," it is apparent the Legislature was using the term in the planning act in a broader connotation. It was seeking short language which again would be applicable to all forms of local government and would tie in with the other criterion of "elected official." In fact, in most municipal forms—commission, borough, town, township—the mayor or other presiding officer (*e. g.,* president of the board of trustees in villages, *R. S.* 40:158–2) is not "the chief executive" at all, but legally only the titular head, whose powers are never full and vary greatly with the particular charter. He is "the chief executive" solely in "strong-mayor" plans, as under the Faulkner act, *N. J. S. A.* 40:69A–39, *et seq.* See *Final Report of the New Jersey Commission on Municipal Government* 2–3 (1949). Consequently we are satisfied that the Legislature intended to put the appointing power in the mayor rather than the manager.[7]

This brings us to the second aspect of reevaluation of the problem of the case, *i. e.,* whether this intent is rendered ineffective by reason of provisions of the 1923 manager act itself. As indicated in two places—by *R. S.* 40:79–5 and *N. J. S. A.* 40:80–12—the provisions of other municipal law shall be applicable so long as they do not clash with the manager act. And, as previously pointed

---

[7] In the recommended revision of the planning act submitted by the County and Municipal Law Revision Commission (introduced in the 1961 Assembly as bill A–773), there is no definition of "mayor." Class II and IV members are "to be appointed by the elected chief executive and approved by the governing body." *Sec.* 40A:7–6a. In the Commission's report (*Fourth Legislative Report,* October 1961), it is said (at *p.* xiii) that the purpose of the change "is to avoid the problem of having planning board members appointed by a non-elected official in municipalities governed by the council manager form of government." The comment seems obviously to have been inspired by the Law Division's decision in the instant case.

out, there are provisions seemingly inconsistent on their face. "The manager shall * * * appoint and remove all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this subtitle * * *." *R. S.* 40:82–4(d). The mayor has only such powers and duties as are conferred upon him by the subtitle, *R. S.* 40:81–8, and, specifically, power of appointment conferred on the mayor by any act or ordinance "shall be construed as meaning the municipal manager," with two non-pertinent exceptions. *R. S.* 40:82–5.

This situation projects once more the matter of resolution of conflicts and omissions involving local government statutes—an ever recurring source of difficulty in New Jersey because in this State it is common to legislate as to municipal affairs in many ways. A single municipality may be subject to laws based on classification (city and classes thereof, borough, town, township, village), form of government (commission, manager, Faulkner act optional charters), general acts applicable to all municipalities (so-called Home Rule Act of 1917, planning and zoning laws, etc.), special legislative charters and other groupings, as well as non-statutory general law (*e. g., Manno v. City of Clifton,* 14 *N. J. Super.* 100 (*App. Div.* 1951)). Conflicts and gaps are inevitable, answers rarely easy and clear-cut. Litigated results frequently seem difficult of reconciliation, especially from the point of view of the expressed rationale of judicial opinions. Other instances of these problems involving this same 1923 manager act are *Peck v. New Barbadoes Township,* 12 *N. J. Misc.* 508 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 118 (*E. & A.* 1935); *Manno v. City of Clifton, supra; Wagner v. Lodi,* 56 *N. J. Super.* 204 (*App. Div.* 1959), certif. denied 30 *N. J.* 599 (1959); *Smith v. City Council of Hackensack,* 70 *N. J. Super.* 209 (*App. Div.* 1961), certif. denied 36 *N. J.* 300 (1962).

Judicial resolution of such matters must be guided by only one principle: legislative intent. The recent language

of this court in *State v. Provenzano,* 34 *N. J.* 318, 322 (1961), although describing the construction of a single statute, is pertinent here: "The goal of the interpretative process is the intent of the Legislature \* \* \* All rules of construction are subordinate to that obvious proposition." *Turon v. J. & L. Construction Co.,* 8 *N. J.* 543, 557 (1952) uses this language: "The reconciliation of apparently conflicting statutes, judged by the letter alone, to conform to the spirit of the legislation as a whole is a common exercise of the judicial interpretative function." Since ascertainment of intent is necessarily a matter of reconstruction and has elements of fiction in it, a court's realistic approach should be, as a learned contemporary scholar phrases it, to try "to make sense out of the legislation, so far as text and context may allow." *Llewellyn, The Common Law Tradition: Deciding Appeals* 529 (1960).

We cannot solve problems of this kind merely by mechanically selecting and applying a canon or maxim of statutory construction and mouthing it as the reason for the result reached. While they represent "an accepted conventional vocabulary," which lawyers and judges traditionally utilize in argument and opinion, speaking in "a diplomatic tongue," there are, as Llewellyn emphasizes, two opposing canons on almost every point and "to make any canon take hold in a particular instance, the construction contended for must be sold, essentially, by means other than the use of the canon \* \* \*." *Id.* 374–375, 521.

If we approach this conflict to seek the sense of the situation, resolution is not hard to come by. As has been pointed out, in both the original planning act definition and the subsequent changes, the Legislature most definitely had the manager form of government in mind and made special appointment provisions with respect to it. There can be no doubt of the intention that they should apply. We cannot ascribe a futile motive to such a deliberate act. The Legislature must be deemed to have had knowledge of the provisions of the manager act and to have acted

the way it did in the planning law in the light thereof. *State v. Federanko,* 26 *N. J.* 119, 129 (1958). It makes no sense whatever to say that the Legislature would so specifically express its desire that the mayor be the appointing authority for planning board members only to have that expression simultaneously nullified by the broad provision of the manager act that all mayoralty appointments automatically repose in the manager.

Moreover, it may well be said that, beneath the surface, there is no true inconsistency between the appointment provisions of the two statutes. The general power of appointment given to the manager, consistent with his function as "the chief executive and administrative official" rather than a policy-maker, refers to department heads and all other officers, subordinates and assistants. The theory is that the manager, having complete charge of the everyday administration of municipal business and affairs, should have the power to hire and fire those for whose performance he is responsible and must direct. Our cases, which have been strict in protecting the appointment authority of the manager both under the 1923 law and the Faulkner act, have been concerned with positions in the administrative service. *Ware v. Board of Commissioners of Cape May City, supra,* 120 *N. J. L.* 48, affirmed 121 *N. J. L.* 545; *Capibianco v. Civil Service Commission,* 60 *N. J. Super.* 307, 316 (*App. Div.* 1960); *Townsend v. Pequannock Township,* 47 *N. J. Super.* 294 (*Law Div.* 1957). But see *Raff v. Sesnick,* 44 *N. J. Super.* 271 (*Law Div.* 1957). There is no such strong reason to find the power in the manager for the members of policy-making or *quasi*-judicial agencies not subjects of his responsibility. The N. J. Commission on Municipal Government in 1949 concluded that such "*quasi*-independent boards" created and governed by general law, like planning and zoning boards, should be continued, even under the manager form of government, "in those fields in which boards or commissions are essential to carry out particular functions or discharge special

trusts." *Final Report, pp.* 13, 43. An automatic provision transferring mayoralty appointments to the manager is, therefore, amenable to the policy construction that it has reference to administrative posts, appointment of which was given to a mayor under other forms of government or general statutes and not to members of policy-making or *quasi*-judicial agencies, absent some further clear legislative indication to the contrary. This interpretation is particularly pertinent to the 1923 manager act which, as we have said, contains no reference at all to bodies like the planning board, it having been enacted before they came into common use. And in its only provision covering related but independent entities (board of education and trustees of the public library), the power of appointment is expressly retained in the mayor.

It may also be noted that there has been no consistently held opinion by the National Municipal League, the original sponsor and constant advocate of the manager form, as to where the appointing authority for a planning board should reside. There is consequently no "right" answer, in the underlying sense, toward which a court ought to aim. The League has made its views and detailed recommendations known since 1916 by preparing a "Model City Charter" in successive editions. The original version in that year placed all such appointments in the manager. The second edition in 1927 limited the manager's appointment power to officers and employees in the administrative service of the city and gave the council the authority to name planning agency members. In the third edition in 1933, the proposal reverted to appointment of five members by the manager plus the manager himself and a member of the council to be designated by it. The current edition, published in 1941, restores the authority to the council, with the manager and mayor to be *ex officio* members. The council-manager plans authorized by the Faulkner act come closer to this approach in giving the council power to provide the manner of appointment. See note 1, *supra*. It may be added that the sense of the

Faulkner act provision tends toward the conclusion that in manager municipalities so governed its appointment provisions should prevail over those in the planning act, since the Legislature has dealt expressly with the manner of board appointments and thereby clearly indicated its special intention in that distinct situation.

We find no tenable basis whatever for the claim of the city and the appointees of the council here that the power of appointment should rest in the council. There is absolutely nothing in the planning act to ground such a suggestion and the 1923 manager act, as previously noted, gives no appointive power to the council except as to certain specified offices not including the planning board. The fact that the Faulkner Act manager plans make councilmanic appointment possible furnishes no warrant for the judiciary to make uniform expressly different legislative provisions, as much as it might be desirable that all manager communities be governed similarly.

The remaining question is the identity of the Class I member. This is purely a question of the meaning of the planning act since no appointing authority is involved. We think it clear that the statute intends, and always has since the original enactment of 1930, that the mayor be the occupant. In that initial version, when the power to appoint other classes was expressly placed in the manager by the definition section, the law described the Class I member as "mayor, *ex-officio*." This could have no other meaning than the mayor himself by virtue of his office and was necessary so that the definition section would not operate to make "mayor" mean "manager" here as well. Apparently by oversight the phrase was not deleted when the appointing power was placed in the mayor by the 1948 amendment. While it was no longer necessary to secure the purpose intended in 1930, it did no harm. It was removed in the 1953 revision, but since we have found the definition of "mayor" then substituted had the same meaning as that in the 1948 amendment, it follows that there was no intention thereby

to change the identity of the Class I member. This result accords with the common sense thought that a word should be given the same meaning when used more than once in a statute unless the contrary is clearly manifested. The suggestion can well be made that the manager should always be a member of the planning board and under our interpretation he will not be unless appointed by the mayor as a Class II member. The matter is, however, again one of permissible legislative choice and not within the judicial realm.

██ We should like to make a further comment for the future guidance of the bench and bar concerning the expedition of all litigation involving public questions. This case concerns the proper composition of an important public body, not finally decided until more than a year after the controversy arose. One brief tells us that a councilmanic appointee, who we have decided was not entitled to his post, was elected chairman of the board for 1961 and designated at least one committee which performed important duties and functions in the subdivision regulation field. This case, although there appears to have been no undue procrastination, was not decided at the trial level until about six months after the respective board appointments were made and notice of appeal was not filed until a month after the judgment. Public matters, including all those arising under *R. R.* 4:88, should be expedited and are required to be given preference, *R. R.* 4:41–4(b), so that final dispositions may be had at the earliest possible date. To accomplish this, the pretrial conference should be noticed and held immediately after the answering pleading is filed, without waiting for the usual discovery period to run. In order that the court may be sure to know of the pendency of such actions, counsel are to advise the assignment judge thereof as soon as the last pleading has been filed. Arrangements for the most expeditious method of hearing and determining the issues can be explored and decided upon at the conference and a timetable set. Similarly, in event of appeal, notice thereof should

be· served and filed as soon as possible and immediately thereafter the appellant should serve notice of motion in the Appellate Division asking that court to set an accelerated time schedule for the service of briefs and to fix a very early argument date, even if that involves hearing of the matter by a summer vacation part, so that the cause and the public interest may be given that preference contemplated by our appellate rules. *R. R.* 1:8–1(b); 2:8–1. Similar application should be made in this court in the· event the case is pending or sought to be brought here.

The judgment of the Law Division is reversed and the cause is remanded with the direction to enter judgment declaring that the mayor is the Class I member of the planning board; that the mayor holds the appointing authority for Class II and IV members; that defendants Staudt and Goceljak are respectively entitled to those memberships; and that defendants Holster and Hahn be ousted therefrom. Costs here and in the court below in favor of all parties except the city, to be taxed against the city alone.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.