79 N.J. Super. 96 (1963)
190 A.2d 675
EVERETT WRIGHT, ET AL., PLAINTIFFS-APPELLANTS,
v.
VILLAGE OF SOUTH ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1963.
Decided May 3, 1963.
*98 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Leonard Estrin argued the cause for appellants (Messrs. Deubel & Estrin and Mr. Franklin C. Phifer, attorneys).
Mr. Angelo A. Mastrangelo argued the cause for respondent (Mr. Donal C. Fox, South Orange Counsel, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from a Law Division order granting defendants' motion for summary judgment.
Plaintiffs are registered voters and taxpayers of the Village of South Orange. On June 18, 1962 the village governing body adopted an ordinance authorizing the construction of a new library and providing for a bond issue to finance its cost. The ordinance was first published on June 21, 1962. Thereafter a petition protesting the ordinance, signed by plaintiffs and 3,461 other alleged registered voters of the municipality, was presented to the village clerk on July 9, 1962 for filing and processing under N.J.S.A. 40:69A-184 et seq., and "other Statutes made and provided for." The clerk refused to accept the petition.
Plaintiffs then brought a proceeding in lieu of prerogative writs to compel the clerk to file and process the petition and to stay all actions and proceedings based upon the ordinance until further order of the court. Defendants answered, setting up as defenses that all their acts were in accordance with law and the petition insufficient to accomplish a referendum. *99 They then moved for summary judgment, which the Law Division judge, after oral opinion, granted.

I.
Plaintiffs claim, contrary to the conclusion reached by the Law Division judge, that N.J.S.A. 40:69A-184 to 196, inclusive, part of what is commonly called the Faulkner Act (L. 1950, c. 210, as amended; N.J.S.A. 40:69A-1 et seq.) applies to municipalities generally, including defendant Village of South Orange. This question was raised in Paolella v. Mayor, etc. of Hackensack, 76 N.J. Super. 86 (Law Div. 1962), where the temporarily assigned County Court judge in a brief opinion held that the cited sections of the Faulkner Act, entitled "Initiative and Referendum," were limited to municipalities organized under that act. Plaintiffs claim that Paolella should be reconsidered because it had not adequately dealt with the issue they raise.
South Orange has continuously operated under a charter granted in 1869. The Faulkner Act was adopted in 1950. It is a fully implemented piece of legislation, providing for charter studies and for the adoption by the voters of a municipality of any one of 15 forms of government set out in the act. Its title clearly expresses the purpose and aim of the legislation: "An Act concerning municipalities, providing a plan of optional charters and for the manner of adoption and effect thereof." The last section of the act, N.J.S.A. 40:69A-210, confirms the purport of the title, the Legislature there declaring that "This act shall be known as the Optional Municipal Charter Law." As the trial judge pointed out, a reading of the act as a whole, as well as an examination of its many sections, reveals it to be a completely integrated effort to carry its expressed purposes into effect.
Plaintiffs, however, contend that the title of the Faulkner Act is broad enough to permit of the application of its pertinent sections to municipalities generally. In support of this thesis they quote the first four words of the title, "An Act *100 concerning municipalities," but make no mention of what follows. They rely upon Public Service Electric & Gas Co. v. Camden, 118 N.J.L. 245 (Sup. Ct. 1937), but that case dealt with the Home Rule Act, L. 1917, c. 152, entitled "An Act concerning municipalities." The court there held that "under such a title the legislature would be likely to deal with the whole subject of municipal power, authority and duty" (at page 251), and that the Home Rule Act "charts the general field of municipal activity, and delimits the powers and duties of its local agencies" (at page 252). Thus, the title of the act related to a single subject and did not violate Article IV, Section VII, paragraph 4 of the 1844 State Constitution. The Public Service case does not support the extreme contention plaintiffs advance. Indeed, Bucino v. Malone, 12 N.J. 330 (1953), which upheld the Faulkner Act in the face of a broadside attack upon its constitutionality, is persuasive authority holding the contrary of plaintiffs' position.
N.J.S.A. 40:69A-184 to 196, inclusive, upon which plaintiffs rely, will be found under Article 17 of the Faulkner Act, which bears the heading "Additional Provisions Common to Optional Plans." Here, again, there is reference to the optional plan theme of the act. Nonetheless, plaintiffs, anticipating that defendants would emphasize this feature, argue that close examination of the several sections appearing in Article 17 demonstrates that the heading is "a loose, convenient, catch-all which is not quite accurate," and this for the reason that certain of the sections are limited to "only some of the optional plans." From this they draw the conclusion that "Once the wording of the heading is revealed for the inaccuracies in one direction, its inaccuracies in the opposite direction are more easily accepted." It follows  so runs the argument  that the reach of the initiative and referendum sections, N.J.S.A. 40:69A-184 to 196, inclusive, "would be as broad as the language used by the legislature in those sections, rather than limited by the Article heading." No supporting citation is given, and we can conceive of none which *101 would bolster plaintiffs' statutory exegesis. Not only does the heading of Article 17 deal with optional plans, but so do the very sections thereof to which plaintiffs point.
We are concerned here with the power of referendum given optional plan municipalities under N.J.S.A. 40:69A-185. South Orange has never adopted any of the plans provided for by the Faulkner Act. Accordingly, the municipality and its voters are not entitled to the referendum right accorded by section 185. The act must be construed in its entirety; the legislative purpose revealed by the whole  general title, section 210, the title of Article 17, and all the rest  controls the interpretation of its several parts. That the selection of an optional plan is a prerequisite to the enjoyment and enforcement of Faulkner Act benefits is further indicated by N.J.S.A. 40:69A-26, "Laws Governing After Adoption of Optional Form of Government":
"Upon the adoption by the qualified voters of any municipality of any of the optional forms of government set forth in this act, the municipality shall thereafter be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law, subject to the transitional provisions of article 17 of this act, unless and until the municipality should adopt another form of government as provided by law."
Plaintiffs' claim that the referendum (and initiative) provisions of the Faulkner Act should be considered as generally applicable to all municipalities would lead, inevitably, to the conclusion that the Legislature impliedly wrought broad changes in the municipal laws of New Jersey by foisting upon all municipalities the right of initiative and an all-comprehensive scheme of referendum review. Among these laws would be the referendum statutes relating to single aspects of municipal government, such as the right of referendum where an ordinance authorizes an improvement, R.S. 40:49-9, or authorizes the incurring of indebtedness, R.S. 40:49-27  both of them part of the Home Rule Act, L. 1917, c. 152. There are, too, the grant of referendum and initiative rights to voters in commission form of government municipalities. *102 R.S. 40:74-5 to 8 (referendum); R.S. 40:74-9 to 18 (initiative). One may not reasonably assume that the Legislature, by passing the Faulkner Act, meant to work such extensive statutory changes as would follow were plaintiffs correct in the argument they advance. Rather, one must presume that it was fully aware of the existing state of our municipal law, and that the incorporation of the initiative and referendum provisions, N.J.S.A. 40:69A-184 and 185, into the Faulkner Act was not done with the purpose of altering or destroying laws long on the statute books.

II.
In contending for a universal application of the referendum features of the Faulkner Act, plaintiffs resort to the argument that to hold otherwise would deny the petition signers their constitutional rights of equal protection of the laws, due process and freedom from discrimination.
It should first be noted that plaintiffs and their fellow petitioners were not left without a right of referendum. R.S. 40:49-27, referred to above, is part of the Home Rule Act and therefore applicable to all municipalities. It provides:
"Any ordinance authorizing the incurring of any indebtedness, except for current expenses shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition, * * *."
Plaintiffs did not take timely advantage of this statute. Concededly, the ten-day period for filing had expired when they presented their petition to the village clerk on July 9, 1962.
We find plaintiffs' claim of trespass upon constitutionally guaranteed rights specious. There is no discrimination. *103 Such a contention must proceed from the premise of an unreasonable statutory classification  a premise plaintiffs do not even bother to express, much less support. Reasonable classification means similar treatment for those similarly situated. Cf. Passaic v. Consolidated, etc., Pension Fund Comm'n, 18 N.J. 137, 146 (1955); Hotel Suburban System, Inc. v. Holderman, 42 N.J. Super. 84, 93 (App. Div. 1956). What plaintiffs are asserting is that if section 185 of the Faulkner Act is considered as extending to less than all municipalities, then it discriminates against those satisfied with their existing forms of government. But what plaintiffs overlook is that municipalities are creatures of the State, possessing only such powers of government as the Legislature grants them. Wagner v. Newark, 24 N.J. 467, 474 (1957); Bucino v. Malone, above, at page 345. Obviously, the right to the exercise of any such power may be conditioned upon enumerated factors. In this case the prerequisite is that a municipality adopt one of the optional charters. To say that the voluntary rejection of such a prerequisite, i.e., nonadoption of an optional charter, cannot constitutionally deprive a municipality of any of the powers and benefits conferred by the Faulkner Act is to attack tangentially the validity of the Bucino decision.
Plaintiffs' other constitutional arguments can fare no better. The equal protection clause, and indeed all restraints upon the states stemming from the Fourteenth Amendment to the Federal Constitution, are not applicable to municipalities. Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1928); Clifton v. Passaic County Board of Taxation, 28 N.J. 411, 422 (1958). To the extent that plaintiffs assert a legal standing of their own to attack the constitutionality of the Faulkner Act, we need say no more than that any such claimed right is public in nature, to be shared with all other residents of the municipality. Their "right" rises no higher than that of the municipality itself. Cf. Becker v. Adams, 37 N.J. 337, 340 (1962). But all that aside, it should be observed that plaintiffs would destroy the *104 very statute on which they rely for a referendum, thereby hoisting themselves by their own petard.

III.
Finally, plaintiffs contend that the village clerk's rejection of the petition abridged freedom of speech and denied the constitutional right of the people to petition their government for redress of grievances. U.S. Const., First Amendment; N.J. Const. 1947, Art. I, par. 18. Here their argument is addressed to a feature of the petition requesting that the governing body repeal the library ordinance. The request must be considered in the full context of the petition.
The petition bears the title "REFERENDUM PETITION." Successive "Whereas" clauses recite the passage of the offending ordinance; that the planned expenditure of $700,000 did not include the $70,000 already spent for the site, bond interest over the years, the cost of furniture and furnishings, and architects' fees; that total expenditures will reach $1,000,000; that the planned demolition of the existing library building was wasteful, and the plans for the new library in "lavish excess" of community needs; that the present building could be improved and enlarged. Then follows:
"NOW, THEREFORE, BE IT RESOLVED: That the ORDINANCE passed by the Board of Trustees of the Village of South Orange, N.J., which is quoted above by its Title, be repealed by the Board of Trustees, or that said ORDINANCE be approved or disapproved by a REFERENDUM by all of the VOTERS of South Orange, N.J. at the polls at the next General Election set by Law therefor.
This PETITION FOR REFERENDUM is our legal right under that Section of New Jersey Statutes entitled, `INITIATIVE AND REFERENDUM,' Title 40:69A-184 to End, and other Statutes made and provided for." (Italics ours)
This is followed by the caption "REFERENDUM COMMITTEE." Under it are listed the names and addresses of the five plaintiffs, and below this appear the names and addresses of those who signed the petition  3,466 in all.
*105 The title of the petition, the capitalized reference to "REFERENDUM" and "PETITION FOR REFERENDUM" in the quoted text, and the caption "REFERENDUM COMMITTEE," make it entirely clear that the signers had one overriding thought  to bring the ordinance to a referendum vote. This is both explicit and implicit in the petition. Plaintiffs (the "Referendum Committee") now seek to save their brand from the burning by calling attention to the request that the governing body repeal the library ordinance  local legislation presumably undertaken after long study and a consideration of all factors touching the community welfare.
Plaintiffs, in effect, say that the village clerk should have searched the language of their petition, despite its captions and capitalization, and then recognized the constitutional right here asserted. If one may assess responsibility, the fault was not so much his as theirs. Accepting their present claim that they had a right to petition for redress of their grievances, it can only be said that they masked this purpose  presuming, as we must, that it was done unintentionally  with prose ineptly composed and projected, to say the least. They could just as easily have used the title, and referred throughout to, "PETITION FOR ORDINANCE REPEAL OR REFERENDUM."
We will affirm the summary judgment, since we have an abiding conviction that plaintiffs' one purpose was to gain a referendum vote. Indeed, that is the main and recurring theme of their present appeal. However, they may, if they so desire, again offer the petition to the village clerk for filing and processing, but only as a petition to the governing body to repeal the library ordinance. Should the petition be filed and the governing body give it any consideration, such consideration will, of course, likewise be limited to the petitioners' request for a repeal of the ordinance.
No costs.