79 N.J. Super. 465 (1963)
191 A.2d 806
CASMER MENTUS, PLAINTIFF,
v.
TOWN OF IRVINGTON, NEW JERSEY, ET ALS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 29, 1963.
*467 Mr. Lester Sandles for plaintiff (Messrs. Sandles and Sandles, attorneys).
Mr. Samuel J. Zucker for defendants William E. Lovell, Mayor, and Harry Stevenson, President of the Municipal Council of Irvington.
Mr. Thomas E. Durkin Jr. for defendants Town of Irvington, Zoning Board of Adjustment members Vincent J. Iacopino, Frank Hiebel, Jules J. Brisick, Joseph Aronoff, Stanley T. Macysyn and the following members of the Town Council, Michael Blasi, Walter Jonkoski, George Mazauskas, Mary Pilart and Henry Smolen.
WHIPPLE, J.S.C.
This matter comes before this court on a complaint predicated on the Declaratory Judgment Act and is blended with the issue by way of complaint in lieu of prerogative writs as to whether or not the present alleged members of the Zoning Board of Adjustment of the Town of Irvington have been validly appointed by the Municipal Council of Irvington. The plaintiff is a member of that Council. The defendants are the Town of Irvington, the mayor, the present appointees to the zoning board of adjustment and the members of the municipal council. The mayor and the president of the council will hereinafter be referred to as the "mayor's group."
The following facts are not in dispute. In May 1962 the Town of Irvington formally adopted the Mayor-Council Plan D form of government, effective July 1, 1962, under the Optional Municipal Charter Law, L. 1950, c. 210, commonly known as the Faulkner Act and now indicated as N.J.S.A. 40:69A-1 et seq.
*468 In July 1962 the Town of Irvington adopted ordinance MC-2001 (known as the Administrative Code) which in article XI, section 11.5, contained the following provision:
"The Zoning Board of Adjustment, as heretofore established and empowered pursuant to law (R.S. 40:55-36 et seq.) is continued and the members shall be appointed by the Mayor with advice and consent of the Council."
On September 25, 1962 the mayor submitted to the council the names of five appointees to the zoning board of adjustment. A dispute developed between some members of the council and the mayor as to whether or not the mayor had the power to suggest appointments to the zoning board of adjustment subject to confirmation by the council. On October 23, 1962 the council refused to consent to the mayor's appointees, explaining that the rejection was not based upon the qualifications of the appointees but rather on the question of who had the power of appointment.
On December 4, 1962, over the mayor's veto, the council approved an amendment to the Administrative Code which eliminated only that portion of section 11.5 which provided that members of the zoning board of adjustment shall be appointed by the mayor, with the advice and consent of the council. As the ordinance now stands it provides:
"The Zoning Board of Adjustment, as heretofore established and empowered, pursuant to law (R.S. 40:55-36 et seq.) is continued"
On December 11, 1962 the council directly, and without consideration or consultation with the mayor, adopted a resolution naming the present members of the zoning board of adjustment who are defendants in this proceeding.
The gravamen of the controversy before this court rests in a determination to be made as to whether or not the members of the Zoning Board of Adjustment of Irvington must first be appointed by the mayor alone, or by the mayor subject to confirmation by the council, or whether the mayor may be completely disregarded and the appointment made exclusively by *469 the council. This problem involves the interpretation of the Zoning Act, N.J.S.A. 40:55-30 et seq., and the provisions of the Faulkner Act dealing with mayor-council plans. N.J.S.A. 40:69A 31-80.
Until the Faulkner Act was passed in 1950 there existed no room for disagreement as to whether the council had the power to provide for the appointment of members to the municipal Zoning Board of Adjustment in Irvington. In clear and explicit language N.J.S.A. 40:55-36, as amended in 1948, states that "The governing body or board of public works shall provide for the appointment of a board of adjustment * * *. The governing body or board of public works shall provide for the filling of vacancies resulting from the unexpired term of any member."
Under the definitions section, N.J.S.A. 40:55-1.2 and N.J.S.A. 40:55-1.31, "governing body" is defined as follows:
"`Governing' body means the chief legislative body of the municipality. In cities having a board of public works `governing body' means such board."
A similar definition of the term referring to the board or body with power and authority to legislate appears in R.S. 40:42-2.
It has long been settled that the "governing body" refers to the legislative branch of government as opposed to the executive, and this has always been the generally understood and natural meaning of the term. Kagan v. Caroselli, 30 N.J. 371 (1959); Fitzgerald v. Jersey City, 69 N.J.L. 162 (Sup. Ct. 1902); Vail v. Inhabitants of Plainfield, 9 N.J. Misc. 817, 155 A. 679 (S.Ct. 1931); Frazer v. Teaneck Township, 1 N.J. 503 (1949); Glick v. Trustees of Free Public Library of Newark, 2 N.J. 579 (1949); Freint v. Dumont, 108 N.J.L. 245 (Sup. Ct. 1931); see also 62 C.J.S., Municipal Corporations, § 388, p. 732. This fact is not denied by the parties.
*470 Also not in issue is the fact that the town council of Irvington is the legislative body of that city. See Rutherford v. Hudson River Traction Co., 73 N.J.L. 227 (Sup. Ct. 1906). Even the Irvington Administrative Code, § 1.2 (h), defines "governing body" as the town council as constituted under the charter. The Faulkner Act itself, in N.J.S.A. 40:69A-36, provides that "[t]he legislative power of the municipality shall be exercised by the municipal council except as may be otherwise provided by general law."
If we had before us only the afore-mentioned statutory provisions, this matter would undoubtedly never have required judicial resolution; but upon passage of the Faulkner Act by the Legislature in 1950, a whole new realm of power principles and statutory constructions pervading every area of municipal government awaited those municipalities that saw fit to adopt one of its optional charters.
In this setting the "mayor's group" contends that when the zoning provisions in N.J.S.A. 40:55-30 et seq. are read in light of pertinent Faulkner Act provisions in N.J.S.A. 40:69A-1 et seq. we can perceive a legislative design to invade the province of the town council in appointing members to the board of adjustment and to invest that power in the mayor alone, or in the mayor with advice and consent of the council.
To fully appreciate this argument one must examine the spirit in which the Faulkner Act was conceived and the legislative intent that exists beneath the order of government enunciated therein.
"It was the intendment of the Faulkner act to confer the greatest possible power of local self-government, consistent with the New Jersey Constitution, upon municipalities adopting a plan pursuant to the act, as well as to reduce the vast number of types of local government with all their varying rules and regulations, by providing a flexible general pattern adaptable to the various communities and their needs." Newark v. Department of Civil Service, 68 N.J. Super. 416, 425 (App. Div. 1961).
*471 All grants of power to muncipalities adopting a plan under the act were to be liberally construed in favor of the municipality. See N.J.S.A. 40:69A-30. The Legislature intended to centralize maximum powers in the municipality, giving it the widest possible authority to determine the organization of departments and to control personnel. Myers v. Township of Cedar Grove, 36 N.J. 51, 55 (1962).
The Faulkner Act offers to municipalities various optional forms of government for adoption within the confines of three basic forms: mayor-council, council-manager and small municipality plans. In referring to the mayor-council plan adopted by Irvington, the 1949 report prepared by the New Jersey Commission on Municipal Government on the then proposed Faulkner Act contained the following language:
"This chapter presents the features of the first of the optional forms  a `strong-mayor' plan. This plan provides for a concentration of administrative authority in an elected mayor, who is also given a veto power over ordinances. A significant feature of the plan is the provision for a business administrator who, under the direction of the mayor, shall have considerable responsibility in the budget, personnel and purchasing processes. The legislative power is exercised by an elected council, which selects the municipal clerk, may select a municipal comptroller, and always retains adequate checks on the executive. The mayor, however, is given power commensurate with his administrative responsibilities."
Essentially the same language appeared in the 1948 and 1950 reports published by the Commission.
The "mayor's group" relies most strenuously on the Commission studies. They bring to our attention the fact that the 1950 report clearly states that the general powers of the mayor include appointment of boards or commissions, while the two earlier reports provide for the council to pass on appointments (although this was limited in the 1950 report to the passing on appointments of department heads).
The "mayor's group" also points out the following language which appears in the three reports of the study commission, which they contend changes the definition of the term "governing body":
*472 "Governing Body: Any municipality adopting this plan shall be governed by an elected council and an elected mayor * * *."
Synthesizing all these remarks, "the mayor's group" concludes that the Faulkner Act has stripped the zoning statutes of all meaning save that which is not inconsistent with it; that to be consistent with this act, the expression "governing body" as used in the Zoning Act was given a new meaning, i.e., mayor and council; that to carry out the true intention of the Faulkner Act, which is to centralize administration in a strong mayor, the power of appointment must not be a matter solely in the councilmanic domain.
In this area of law, where a dearth of judicial illumination exists and where existing statutory expressions seem to conflict, this court is concerned solely with finding true legislative intent. This intent must be our only guide. In attempting to reconstruct the legislative mind, all other rules of construction are subordinate to it. Clifton v. Zweir, 36 N.J. 309, 323 (1962).
After realistically appraising the legislative expressions inherent in this problem and giving due weight to the cogent arguments set forth by the "mayor's group," this court is not convinced that the legislative overhauling of municipal law via the Faulkner Act swept out of existence the clear legislative mandate concerning appointment of the zoning board of adjustment as enunciated in N.J.S.A. 40:55-30 et seq.
To begin with, nowhere in N.J.S.A. 40:69A-31-80 (the pertinent sections of the Faulkner Act dealing with mayor-council plans) is there such clear language as to the manner of appointments as is contained in the Commission report. The only directives as to appointments applicable to Irvington contained in the act are: the appointment of a municipal clerk by the council, N.J.S.A. 40:69A-38; appointment of department directors by the mayor with the advice and consent of council, N.J.S.A. 40:69A-43 (b); and the appointment of subordinates by the department heads, N.J.S.A. 40:69A-43 (d).
*473 The defendants argue that it could not conceivably be the design of the Legislature to make the mayor the strong chief executive of a municipality and responsible for appointment of department heads and suddenly leave him powerless with respect to other important statutory boards. However noteworthy this contention may be, it is nevertheless an argument based on conjecture. This matter is purely one of permissible legislative choice and not within the judicial realm. See Clifton v. Zweir, supra. This court must assume that when the Legislature passed the Faulkner Act it was aware of the existence of the Zoning Act and the explicit provisions therein already existent and to have acted the way it did in the light thereof. State v. Federanko, 26 N.J. 119 (1958). The Faulkner Act contains no inference of legislative intent to change this. We are not in a position to presume that which the Legislature has not even implied.
The language of Judge Goldmann in Wright v. South Orange, 79 N.J. Super. 96, 102 (App. Div. 1963), is pertinent:
"One may not reasonably assume that the Legislature, by passing the Faulkner Act, meant to work such extensive statutory changes as would follow were plaintiffs correct in the argument they advance. Rather, one must presume that it was fully aware of the existing state of our municipal law, and that the incorporation * * * into the Faulkner Act was not done with the purpose of altering or destroying laws long on the statute books."
I view the approach taken by the "mayor's group" as substituting the court's conception of what is convenient or desirable for the plain and explicit legislative word. Whether we like the legislative command or not, we cannot say the law-making body has not expressed itself with sufficient clarity and precision to communicate its intent so as to invoke our constitutional obligation to respect it as expressed. See Judge Conford's concurring opinion in Ricciardi v. Rabin, 79 N.J. Super. 7 (App. Div. 1963).
Throughout the Faulkner Act, references are made to the applicability of "general law." This expression is defined in *474 the act as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities * * *." N.J.S.A. 40:69A-28. Imbedded in the mayor-council sections of the act is a firm indication that the Legislature intended the provision of the zoning law conferring zoning board appointive powers on the "governing body" to be such a "general law not inconsistent with this act," and thus a law existing even in municipalities adopting the Faulkner Act. N.J.S.A. 40:69A-43(f) states as follows:
"Whenever in any city of the first class having a population of more than 250,000 the governing body is authorized by any provision of general law to appoint the members of any board, authority or commission, such power of appointment shall be deemed to vest in the mayor with the advice and consent of the council." (Emphasis added)
While this provision is not applicable to a town the size of Irvington (population approximately 59,000), it does provide a further clue to legislative design. It would seem to this court that the Legislature intended to change the definition of "governing body" to mean "mayor with the advice and consent of the council" only in cities of the first class; on the other hand, in cities with a lesser population adopting the Faulkner Act, the existing construction of "governing body" (town council), as found in N.J.S.A. 40:55-1.2 and 1.31, was intended to apply. Moreover, if the "mayor's group" were correct, it would make the above provision redundant, and such a construction should be avoided. Board of Education of Hackensack v. Hackensack, 63 N.J. Super. 560 (App. Div. 1960).
Further examination of the act reveals additional support for this position. While the expression "governing body," as defined in the zoning law, was intended to connote merely the council, there is no definition of the term in the Faulkner Act itself. There is no indication that this expression, as construed in the Commission report, i.e., mayor and council, was *475 intended to be used in a definitional sense. Moreover, if it were, something far different was enacted. See N.J.S.A. 40:69A-32, which declares that each municipality shall be governed by an elected council and an elected mayor, and by such other officers and employees as may be duly appointed pursuant to article 3 (Mayor-Council Plan A), general law or ordinance. Certainly, this incongruous group was not intended by the Legislature to have the power to appoint the board of adjustment.
While it would be well to point out at this time that this court is not bound by anything contained in the Commission report and need not give effect to it, Meyers v. Cedar Grove, supra, curiously enough, peering into that report reveals additional support for the council's position. The Commission on the Faulkner Act in 1949 concluded that such quasi-independent boards created and governed by general law, like planning and zoning boards, should be continued "in those fields in which boards or commissions are essential to carry out particular functions or discharge special trusts." Final Report, pp. 13, 43. (Emphasis added.)
This very language was recently quoted approvingly by the Supreme Court in a similar action to determine who had the power to make appointments to the planning board of the City of Clifton. Clifton v. Zweir, supra. The city was governed under the 1923 Manager Act, and the court had to resolve provisions of that act with the 1953 Municipal Planning Act which created local planning boards. The Planning Act, N.J.S.A. 40:55-1.4, provides for the mayor to make appointments in two of the four classes which comprise the planning board. The Manager Act, however, specifically provided for the manager to exercise appointive powers that may have been conferred on the mayor by any act or ordinance. R.S. 40:82-5. The Law Division held that the manager, as the chief executive of Clifton, met the definitional characterization of mayor as set forth in the Planning Act and was therefore the proper party to make the appointments. The Supreme Court reversed, holding that the provisions of the *476 Manager Act reposing mayoralty appointive powers in the manager did not nullify or render ineffective the explicit provisions of the Planning Act resting appointive power in the mayor.
This court is struck by the fundamental similarity with the facts there and the case sub judice. Both the Manager Act and the Faulkner Act provide that all general law not inconsistent with the acts should still be applicable. Both acts attempt to establish basic municipal powers in broad terms. The planning and zoning statutes set forth explicitly the appointive powers to the respective boards, which powers seem inconsistent with the existing applicable municipal law, namely, the Manager Act and Faulkner Act, respectively.
Adopting the approach taken by the Supreme Court in the Clifton case, this court sees no true inconsistencies between the appointment provisions of the Zoning Act and Faulkner Act. The power of appointment given to the mayor by the Faulkner Act, consistent with his function as the chief executive and administrative official, refers to department heads. This is consistent with the theory that the mayor should have the power to hire and fire those for whose performance he is responsible and must direct. However, there is no strong reason for finding the power in the mayor for members of quasi-judicial agencies not subjects of his responsibility. The language of the Faulkner Act reserving appointive powers in the mayor is amenable to the policy construction that it has reference to administrative posts and not to members of quasi-judicial agencies. Clifton v. Zweir, supra; Townsend v. Township of Pequannock, 47 N.J. Super. 294 (1957). This reasoning is most consistent with the Commission report previously quoted.
In the Clifton case reference was made to the fact that in manager municipalities governed under the Faulkner Act the appointive provisions of that act should prevail over those in the Planning Act since the Legislature had dealt expressly with the manner of appointments. This has reference to section 40:69A-95 of the Faulkner Act, which gives the manager *477 power to appoint and remove all officers, subordinates and assistants for whose selection and removal no other method is provided in article 8 (Council-Manager Plan A). This explains why the Legislature found it necessary specifically to provide therein that in manager municipalities the council should provide for the manner of appointment of a zoning board of adjustment. N.J.S.A. 40:69A-89. Otherwise, the explicit appointive provisions of the Zoning Act would be abolished by the broad language of N.J.S.A. 40:69A-95. Since no such far-reaching appointive provision exists in the mayor-council options of the Faulkner Act, it was unnecessary to provide correspondingly for councilmanic zoning board appointments. In fact, a provision for the council to provide that the functions, powers and duties of a board of adjustment pursuant to general law be performed and exercised was deleted from the version of the mayor-council section of the Faulkner Act finally adopted. See Preliminary Statement (1948), p. 42.
Before concluding this discussion I deem it necessary to call attention to two recent Supreme Court cases construing the Faulkner Act. These opinions hold that the terms of all elected and appointed municipal officers come to an end upon the taking effect of a Faulkner Act plan of government notwithstanding that the offices of certain independent authorities like a parking or a utilities authority are not abolished. Broadway National Bank of Bayonne v. Parking Authority of Bayonne, 40 N.J. 227 (1963); Jordan v. Zidel, 40 N.J. 244 (1963). I do not view the holding in the present case to be inconsistent. All parties are agreed that the terms of office of the members of the board of adjustment come to an end upon passage of the Faulkner Act. Even if we were to assume that a board of adjustment was not an independent entity like the parking and utilities authorities, and therefore its offices were necessarily abolished upon the adoption of the Faulkner Act (N.J.S.A. 40:69A-207), there would be no basis for making a further assumption that the appointive provision of the Zoning Act (N.J.S.A. 40:55-36) which provides *478 for appointment of a board of adjustment does not exist as "general law" in Faulkner Act municipalities. The issue of where appointive powers resided was never even raised in the Bayonne case, where in its recital of the facts the Supreme Court presumed without discussion that the council under the Faulkner Act was the "present governing body."
From all of the foregoing I find that N.J.S.A. 40:69A-31-80 of the Faulkner Act dealing with the mayor-council plan did not abolish the councilmanic power to provide for appointing the board of adjustment created in N.J.S.A. 40:55-36.
I further find that the expression "provide for" is even broader than the expression "appoint" and necessarily encompasses the latter. Therefore, I find the Board of Adjustment of Irvington as presently composed to be legally sanctioned.