845 A.2d 687 (2004)
368 N.J. Super. 181
Raul SANCHEZ, Petitioner-Appellant,
v.
NEW JERSEY STATE PAROLE BOARD, Respondent-Respondent.
Sebastian Imperato, Petitioner-Appellant,
v.
New Jersey State Parole Board, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued/Submitted February 10, 2004.
Decided April 5, 2004.
*688 Brian J. Neff, Assistant Deputy Public Defender, argued the cause for appellant Raul Sanchez in A-3685-01T1 (Yvonne Smith Segars, Public Defender, attorney; Mr. Neff, of counsel and on the brief).
Rem Zeller, Hackensack, for appellant Sebastian Imperato in A-2965-02T2 (Jeffrey *689 B. Steinfeld, of counsel and on the brief).
Patrick DeAlmeida, Deputy Attorney General, argued the cause for respondent in A-3685-01T1 (Peter C. Harvey, Attorney General, attorney; Mr. DeAlmeida, of counsel; David M. Ragonese and Tamara L. Rudow, Deputy Attorneys General, on the brief).
Peter C. Harvey, Attorney General, for respondent in A-2965-02T2 (Patrick DeAlmeida, Deputy Attorney General, of counsel; Tamara L. Rudow, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by
COBURN, J.A.D.
The result of this litigation depends on the meaning of one of the key provisions of the Violent Predator Incapacitation Act of 1994, commonly known as Megan's Law. L. 1994, c. 130. That provision, codified in N.J.S.A. 2C:43-6.4,[1] is designed to protect the public from recidivism by defendants convicted of serious sexual offenses. To achieve that end, it mandates, in addition to the ordinary sentence provided by the Criminal Code for the covered offenses, a special sentence of community supervision for life ("CSL").
The interpretive problem arises because, although CSL defendants are supervised in New Jersey "as if on parole[,]" violation of a CSL condition is only punishable as a crime. Ibid. In other words, the New Jersey State Parole Board (the "Parole Board") has no administrative enforcement powers; it cannot return a CSL defendant to prison through the revocation hearing procedures applicable to ordinary parolees. As a result, other states may but are not required to accept supervision of CSL defendants under the Uniform Act for Outof-State Parolee Supervision, N.J.S.A. 2A:168-14 to -17 ("UAOPS"), an interstate compact to which all states have subscribed, and which we adopted over sixty years ago. L. 1936, c. 41. The precise issue is whether the Parole Board may permit a CSL defendant to reside in a state, such as New York, that refuses to accept supervision solely because of the Parole Board's lack of administrative enforcement powers.
These appeals concern CSL defendants who applied for permission to live in *690 the State of New York. Raul Sanchez pled guilty on December 17, 1997, to first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(1), and received a five-year term of imprisonment. Sebastian Imperato pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2c(2), presently codified as N.J.S.A. 2C:14-2a(7), and received a sentence of probation for two years, with 180 days of incarceration in jail. Both received the mandatory special CSL sentence required by N.J.S.A. 2C:43-6.4, and both instituted administrative procedures here and in New York seeking permission to live in the State of New York. We omit most of the details of those ultimately unsuccessful procedural steps because they have no bearing on the issue to be decided.
The Parole Board conditionally approved the requests, subject to New York agreeing to supervise the appellants pursuant to UAOPS. Ultimately, the New York Division of Parole ("NYDP") refused because of our Parole Board's inability to assure "that violators will be returned to New Jersey if it is determined that they have violated the conditions of their release/supervision in an important respect."
Since our Parole Board's only recourse for a violation was the filing of a criminal complaint, which might not be pursued by the county prosecutor, it conceded that it lacked the necessary administrative authority. Nonetheless, it filed a formal grievance under the UAOPS, which has provisions for resolving disputes between its members. On or about July 21, 2003, the Executive Council of UAOPS issued an opinion agreeing with New York, while noting that New York could accept supervision as a matter of discretion. Consequently, the Parole Board denied the relocation requests, and Sanchez and Imperato filed separate appeals, which we have consolidated for purposes of this opinion. They argue they were entitled to relief under a proper construction of Megan's Law. Alternatively, they argue that Megan's Law is unconstitutional as applied in this setting.
The denials were based on the Parole Board's interpretation of Megan's Law. In short, it construed this statute to mean that a CSL defendant rejected by another state would have to remain in New Jersey for life. We disagree with that interpretation and hold that in this situation, which was not anticipated by our Legislature, the Parole Board may permit CSL defendants to reside in another state in appropriate circumstances even if that state refuses supervision under UAOPS. Therefore we reverse and remand to the Parole Board for further proceedings.
We note that recently, the Legislature adopted an amendment to Megan's Law resolving the instant problem for defendants whose sexual offenses occurred after January 14, 2004. L. 2003, c. 267. Section 1 of that law amends N.J.S.A. 2C:43-6.4 by redefining the special sentence as "parole supervision for life" ("PSL"), and section 2 amends N.J.S.A. 30:4-123.51b by adding subsection c, which grants the Parole Board administrative power over a PSL defendant to "revoke parole and return the parolee to prison for a specified length of time between 12 and 18 months...." Nonetheless, the problem remains for CSL defendants whose offenses occurred during the ten-year period preceding these amendments.
The fundamental goal of statutory interpretation is ascertainment of legislative intent. City of Clifton v. Zweir, 36 N.J. 309, 322, 177 A.2d 545, 551-52 (1962). Courts must "try `to make sense out of the legislation, so far as text and context may allow.'" Id. at 323, 177 A.2d at 552 (quoting Llewellyn, The Common Law Tradition: Deciding Appeals 529 (1960)). The solution does not result from "mechanically *691 selecting and applying a canon or maxim of statutory construction and mouthing it as the reason for the result reached." Ibid. Ultimately, our decision must "turn `on the breadth of the objectives of the legislation and the commonsense of the situation.'" Koester v. Hunterdon County Bd. of Taxation, 79 N.J. 381, 391, 399 A.2d 656, 661 (1979) (quoting J.C. Chap. Prop. Owner's etc. Assoc. v. City Council, 55 N.J. 86, 100, 259 A.2d 698, 706 (1969)).
The critical language of the Megan's Law provision with which we are concerned states that "[p]ersons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4b (emphasis added). Although the statute does not expressly say so, we infer from the "as if on parole" language that the supervision was intended to be provided by the Parole Board and to the same extent as it would be for ordinary parolees. Cf. State v. Bond, 365 N.J.Super. 430, 443, 839 A.2d 888 (App. Div.2003) ("the Legislature's intent to create a policy whereby CSL would mirror the conditions of parole is clear").
When this statute was enacted, our state had been participating in UAOPS for nearly sixty years. Given that context, and the absence of any express language indicating a Draconian desire to keep CSL defendants within our borders for the rest of their lives, we also infer that the Legislature expected that CSL defendants would be accepted for supervision by other states.
As a result of New York's decision in these cases, as endorsed by the UAOPS's Executive Council, that expectation has been frustrated as of now. Thus, it would appear that although Megan's Law contemplated supervision through UAOPS, a literal reading of its requirement of continuing community supervision would result in restricting CSL defendants to residence in this state unless another state was willing to assume supervision as a matter of discretion.
Fortunately, we are not confined to literal application of words when the result creates an anomaly, particularly one which is so contrary to the objectives of the legislation and the commonsense of the situation. In such circumstances, courts must always be prepared to ask whether "[t]he instant case involves a situation which apparently escaped the attention of the draftsman...." Dvorkin v. Tp. of Dover, 29 N.J. 303, 313, 148 A.2d 793 (1959). Former Chief Justice Weintraub described the duty of a court faced with an interpretive problem of this sort:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purposes of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."

[New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465, 467 (1957) (quoting Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339, 342 (1956)).]
The Legislature's primary purpose in enacting Megan's Law was to increase the protection of the citizens of New Jersey from recidivism by CSL defendants. So long as a CSL defendant remains here, the Parole Board has all the necessary tools to achieve that purpose. If the CSL *692 defendant is not here, our citizens are not in danger.
As the Executive Council of UAOPS made clear, when a CSL defendant has good cause for moving to another state, that state has discretionary authority under UAOPS to accept supervision for the increased safety thereby afforded to its citizens. Another state's refusal to adopt that course simply because enforcement in New Jersey is limited to indictment and extradition provides an insufficient reason for keeping a CSL defendant here. For as a matter of commonsense, we are confident that our county prosecutors would provide the Parole Board with full cooperation in the prosecution of CSL offenders whose offenses occurred before the effective date of the 2003 amendment of Megan's Law, noted above.
The spirit of the original Megan's Law is best served by interpreting it to permit CSL defendants who otherwise qualify for residency in another state under UAOPS to live in that state even if that state declines supervision. However, in that case, the Parole Board may make the change in residency "subject to conditions appropriate to protect the public and foster rehabilitation." N.J.S.A. 2C:43-6.4b.
Since we have resolved these cases based on statutory interpretation, we need not reach appellants' constitutional arguments.
For completeness, we take note of the Interstate Compact for Adult Offender Supervision ("ICAOS"), adopted by New Jersey in 2002. L. 2002, c. 111, codified at N.J.S.A. 2A:168-26 to -39. Most states have joined ICAOS, and it will soon replace UAOPS. However, New York did not adopt it until after the UAOPS Executive Council had ruled on the instant cases. N.Y. Executive Law § 259-mm (McKinney 2004).
Following New York's adoption of ICAOS, the Parole Board asked the New York parole officials if they would now accept CSL defendants. The informal reply was no and for the same reason that CSL defendants had been rejected under UAOPS. We assume that New York took that position on the assumption that New Jersey would not allow CSL defendants to move to New York unless New York agreed to supervise them. Since that assumption is unsound, it may well be that applications for supervision under ICAOS will now be accepted as a matter of discretion. New York cannot have it both ways. If CSL defendants do not fall within the purview of ICAOS, then New Jersey has no obligation to prevent them from moving to New York. If New York is willing to permit the change of residency, assuming the other criteria of ICAOS are met, we expect that New Jersey will cooperate fully to the extent and in the manner allowed by the laws of this state and the rules of ICAOS.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] As applicable to these appeals, that statute provides:

Special sentence of community supervision for life.
a. Notwithstanding any provision of law to the contrary, a court imposing sentence on a person who has been convicted of aggravated sexual assault, sexual assault, [and other sexual offenses] ... shall include, in addition to any sentence authorized by this Code, a special sentence of community supervision for life.
b. The special sentence of community supervision required by this section shall commence upon completion of the sentence imposed pursuant to other applicable provisions of the Code of Criminal Justice. Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation.
c. A person sentenced to a term of community supervision for live may petition the Superior Court for release from community supervision. The court shall grant a petition for release from a special sentence of community supervision only upon proof that the person has not committed a crime for 15 years since last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from supervision.
d. A person who violates a condition of a special sentence of community supervision without good cause is guilty of a crime of the fourth degree.
e.....