# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3203-18T2

J.K.,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Argued December 17, 2019 – Decided January 8, 2020

Before Judges Fisher and Gilson.

On appeal from the New Jersey State Parole Board.

James H. Maynard argued the cause for appellant (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).

Christopher Josephson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher Josephson, on the brief).

PER CURIAM

Defendant was sentenced in 2005 to a three-year probationary term as a result of attempting to lure a twelve-year-old girl into a motor vehicle. The sentencing judge also imposed community supervision for life (CSL) pursuant to Megan's Law, N.J.S.A. 2C:43-6.4. Defendant, who is a dual citizen of Poland and the United States, applied for a transfer of the CSL portion of his sentence to Polish authorities, so he could move there. The Parole Board denied that application and, in an earlier appeal, we adhered to another decision – J.S. v. N.J. State Parole Board, 452 N.J. Super. 1 (App. Div. 2017) – in remanding to the Board because it had "mistakenly failed to consider whether [it] could supervise or monitor J.K.'s compliance with the conditions of CSL or impose special conditions if he was permitted to relocate to Poland." J.K. v. N.J. State Parole Bd., No. A-3522-15 (App. Div. Sept. 27, 2017) (slip op. at 3). We explained our ruling by referring to what we said in J.S.:

> It may be that there are adequate procedures to supervise J.S. consistent with his level of risk and the manner in which he is currently supervised, but the record is devoid of any information about his level of supervision or how that may or may not be able to continue because the Board simply assumed his petition was one for termination and not for permission to transfer residence and supervision. The Board has the ability to impose conditions appropriate for the protection of the public and for rehabilitation. It

certainly had the ability to require J.S. to suggest appropriate conditions.

[452 N.J. Super. at 7.]

And we concluded by repeating that, as it had in J.S., the Board failed to "undertake an informed consideration of any conditions that might be appropriate" before simply denying the application. J.K., slip op. at 3 (quoting J.S., 452 N.J. Super. at 7).

After we remanded, J.K. inquired about the status of his application. The Board's director of the legal support unit (the director) responded in October 2017 that it required an updated application that would include sworn statements from those who would house and employ J.K. in Poland, as well as an explanation about "how" supervision of a variety of the CSL conditions delineated "is to be maintained" if J.K. were permitted to move to Poland.

In August 2018, J.K. submitted a renewed application that the Board also found deficient because it too lacked the information sought. The director explained that J.K. had attached "basically the same letters" provided in the 2015 application and that these letters were deficient because they did not qualify as either certifications or affidavits. The director observed that the letter from the intended employer was "not on formal letterhead of the named company," and she emphasized and explained in detail J.K.'s failure to include information "as

A-3203-18T2

to how supervision in accordance with the established conditions of supervision was to be maintained."

J.K.'s counsel responded in September 2018, advising that no additional information would be provided and requesting that the new application be submitted to the Board in its existing form. Counsel also observed that the Board had "not published and adopted regulations governing international transfers of residence while subject to CSL," and that the director had failed to provide any legal authority supporting the view that J.K. was required to provide further information about how the CSL conditions would be met if J.K. were to reside in Poland.

A month later, a Board panel reviewed and denied the application. J.K. filed an administrative appeal, and the Board affirmed the panel's determination, concluding that the record lacked:

> any information on which to assess the supervising or monitoring of [J.K.'s] compliance with the [CSL] conditions . . . or the imposition of special conditions if he was permitted to relocate to Poland.

With that determination, the administrative proceedings ended.

J.K. appeals the Board's final agency decision, arguing the denial of the new application "was arbitrary and capricious" and that "under controlling court precedent, denial of a request to reside in another country cannot be based on

4

that country's ability or willingness to supervise[.]"  These arguments are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We add only a few additional comments.

J.K. relies, first, on Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 185 (App. Div. 2004), which involved an interstate transfer – Sanchez sought to move from New Jersey to New York – and the impact of New York's refusal to permit a transfer under the applicable Interstate Compact for Adult Offender Supervision in light of New Jersey's inability to assure New York that CSL offenders would be returned to New Jersey if found to have violated the conditions of supervision.  In that context, we held that "[a]nother state's refusal to supervise such individuals provides an insufficient reason for keeping" an individual subject to CSL in New Jersey.  Id. at 188.  In J.S., we adhered to the spirit of Sanchez and implicitly found arbitrary a blanket refusal to allow an individual under CSL to move outside the United States.  452 N.J. Super. at 7. We there acknowledged the Board's "ability to impose conditions appropriate for the protection of the public and for rehabilitation."  Ibid.  And, more importantly in the present setting, we concluded that the Board "certainly had the ability to require J.S. to suggest appropriate conditions."  Ibid.  In short, the

A-3203-18T2

burden was placed on the individual under CSL to demonstrate that there would be sufficient monitoring or supervision while outside the jurisdiction.

As noted, and in following our mandate – based on J.S. – the Board sought an explanation as to how supervision would occur if J.K. were permitted to move to Poland. J.K. expressly refused to provide that information. So, more than two years after we last considered J.K.'s arguments, both the factual record and his arguments remain essentially unchanged. J.K. has eschewed the opportunity to further support his application by providing the information sought by the Board. In these circumstances, we conclude the Board did not act arbitrarily, capriciously or unreasonably in denying J.K.'s application. See Saccone v. Bd. of Trs., Police and Firemen's Ret. Sys., 219 N.J. 369, 380 (2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION