SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**J.K. v. New Jersey State Parole Board (A-76-19) (084035)**

**Argued January 19, 2021 -- Reargued April 26, 2021 -- Decided June 24, 2021**

**PER CURIAM**

In this appeal, the Court reviews the New Jersey State Parole Board's (Parole Board or Board) second denial of J.K.'s petition for permission to change his residency from New Jersey back to his home country of Poland, where he also holds citizenship, while remaining under Community Supervision for Life (CSL).

J.K. was sentenced to CSL in 2005.  In 2015, J.K. filed a petition with the Parole Board seeking to return to Poland while remaining under the supervision of the Board. The Board denied J.K.'s petition.  The Appellate Division reversed, holding that the Board "failed to consider whether [it] could supervise or monitor J.K.'s compliance with the conditions of CSL or impose special conditions if he was permitted to relocate."

Following the Appellate Division's order, the Board requested from J.K. an updated transfer application that should include certifications/affidavits of the parties who intended to provide J.K. with a residence and who intended to offer him employment. The Board also requested that J.K. explain how his supervision could be maintained in "such areas as reporting, change of residence, change of employment, counseling, urine monitoring, notification of an arrest and travel outside of Poland."  The Board also asked for an English translation of any documents written in Polish.

When J.K. submitted a second transfer application, the Board alerted him that his application was missing the requested documentation.  J.K. refused to provide the requested material, and his counsel asserted that J.K.'s "application cannot be deficient in the absence of governing regulations and associated guidelines that stipulate the required contents of such an application."

A two-member Board panel denied J.K.'s transfer application, and the denial was affirmed on appeal.  The Court granted certification.  242 N.J. 508 (2020).  Immediately prior to oral argument, J.K. brought to the Court's attention Board Policy # 09.821, entitled "Offender Requests to Reside Outside of the United States of America," which sets forth an avenue for review and approval of requests by certain parolees to relocate to a foreign jurisdiction while under continued Board supervision.

1

**HELD:** The denial of J.K.'s application was not arbitrary, capricious, or unreasonable. J.K's submissions to the Parole Board were inadequate to secure the relief sought. To the extent that J.K. has refined and updated his application, his recourse is before the Parole Board, which has the necessary expertise to assess the quality of his new submissions under its Policy # 09.821.

1. The Court first addresses whether the Board lacked statutory authority to adopt Policy # 09.821. The Parole Act of 1979 grants broad authority to the Board over parole supervision and specifically confers on the Board the authority to promulgate reasonable rules and regulations as may be necessary for the proper discharge of its responsibilities, which include imposing and altering specific conditions of parole. No statutory impediment denies the Board the ability to permit international relocation of a CSL parolee, while maintaining Board supervision. The Act's explicit grant of authority to the Board allowing for transfers of supervision of a parolee to another state, see N.J.S.A. 30:4-123.59(c), does not limit the Board's authority to impose and alter conditions of its own supervision of a CSL parolee who is permitted to reside out of state. (pp. 12-14)

2. The Criminal Code similarly recognizes the broad authority of the Board and broadly permits the imposition and alteration of conditions as the Board sees fit to fulfill its supervisory responsibilities to protect the public and foster rehabilitation. The Court declines to interpret the statutory grant of authority to the Board as insufficient to permit the Board to allow international relocation while retaining its supervision of a parolee, as it chose to do through the adoption of Policy # 09.821. The Court further rejects the contention that the language in the statute converting CSL to Parole Supervision for Life (PSL) -- according to which "[p]ersons serving a special sentence of community supervision shall be supervised as if on parole," N.J.S.A. 2C:43-6.4(b) (2003) -- prevents the Board from permitting an international transfer. That argument assumes that J.K. is seeking to terminate supervision, but J.K. has only asked to live in Poland while remaining under the supervision of the Board. (pp. 15-17)

3. Finally, under N.J.A.C. 10A:71-6.6(a), "[t]he appropriate Board panel or the Board may modify or vacate a condition of parole at any time for cause." The Court sees no reason why a modification of a condition cannot include an international change of residence to a country in which the parolee maintains citizenship. The Board has already promulgated regulations allowing for an offender to travel outside of the United States of America even though no affirmative statutory language grants it the authority to permit international travel. In sum, the Court rejects the assertion that Policy # 09.821 is invalid because it is inconsistent with the Board's statutory authority. (p. 17)

4. Turning to the arguments advanced by J.K. challenging the Board's denial of his application to relocate to Poland, the Court reviews cases on which J.K. relies in arguing that the Board's decision here was arbitrary, capricious, or unreasonable: Sanchez v. State Parole Board, 368 N.J. Super. 181 (App. Div. 2004), and J.S. v. State Parole Board,

2

452 N.J. Super. 1 (App. Div. 2017).  This case is unlike <u>Sanchez</u>, which involved an actual transfer of supervision to another state jurisdiction.  J.K. seeks to relocate to Poland where he would continue under the Board's supervision, yet he refused to provide adequate and reliable information as to how the Board might satisfactorily perform its CSL supervision after such a relocation.  This matter is also distinguishable from <u>J.S.</u>, in which the Appellate Division remanded for the Board to consider the supervision that it might be able to conduct, notwithstanding J.S.'s relocation to a foreign jurisdiction.  Here, however, on remand, J.K. refused to provide for the Board's consideration the requested information on that very point.  (pp. 17-22)

5.  The Board clearly advised J.K. that his petition was "devoid of any information on which to assess the supervising or monitoring of [J.K.'s] compliance with" CSL, and J.K. declined the opportunity to further support his application by providing the information sought by the Board.  The Board deemed the record on which J.K.'s application was based to be inadequate, and the Court -- limiting its review to the record created before the agency whose decision is on appeal in accordance with <u>Rule</u> 2:5-4(a) -- readily concludes that that determination was not arbitrary, capricious, or unreasonable.  J.K.'s recourse is to apply to the Board under the new policy it has adopted for such purposes and to present the enhanced and updated information that he claims will support his request to relocate to Poland while allowing the Board to fulfill its CSL supervisory responsibilities appropriately and according to the needs of his case.  (pp. 22-23)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in the Court's opinion.**

3

J.K.,

Appellant,

v.

New Jersey State Parole Board,

Respondent.

On certification to the Superior Court,
Appellate  Division.

| Argued | Decided |
| --- | --- |
| January 19, 2021 | June 24, 2021 |
| Reargued | |
| April 26, 2021 | |

James H. Maynard argued the cause for appellant
(Maynard Law Office, attorneys; James H. Maynard, on
the briefs).

Jane C. Schuster, Assistant Attorney General, argued the
cause for respondent (Gurbir S. Grewal, Attorney
General, attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel, Jane C. Schuster, of counsel and on
the brief, and Deborah Hay, and Christopher C.
Josephson, Deputy Attorneys General, on the briefs).

Stephanie A. Lutz, Assistant Deputy Public Defender,
argued the cause for amicus curiae Public Defender of
New Jersey (Joseph E. Krakora, Public Defender,
attorney; Fletcher C. Duddy, Deputy Public Defender, of

counsel, and Stephanie A. Lutz, of counsel and on the
brief).

PER CURIAM

As part of his sentence in 2005 for attempting to lure a minor into a motor vehicle, petitioner J.K. was sentenced to Community Supervision for Life (CSL) in accordance with N.J.S.A. 2C:43-6.4.  J.K. holds dual citizenship in the United States and Poland, where he was born and lived until moving as a child to New Jersey.  In 2015, he petitioned the New Jersey State Parole Board (Parole Board or Board) for permission to change his residency from New Jersey back to Poland while remaining under the supervision of the Parole Board.  His application to relocate to Poland was denied twice.  Petitioner appeals the Appellate Division's affirmance of the Parole Board's second denial, which was based on the inadequacy of petitioner's submissions in support of his request.

An appeal such as this involves the application of the typical standard of appellate review of final agency action.  That standard restricts the parties to issues raised below and the record created before the agency.  This appeal has been complicated because the parties diverged from those tenets.  The unorthodox handling of this matter on appeal will not distract from the manner in which this dispute should be resolved by this Court.

2

For the reasons expressed herein, we affirm the Appellate Division judgment that found appellant's submissions to the Parole Board inadequate to secure the relief sought. To the extent that J.K. represented to us that he has refined and updated his application to relocate to Poland while under continued supervision of the Parole Board, his recourse is before that Board, which has the necessary expertise to assess the quality of his new submissions under its Policy # 09.821, entitled "Offender Requests to Reside Outside of the United States of America." That policy sets forth an avenue for review and approval of requests by certain parolees to relocate to a foreign jurisdiction while under continued Board supervision.

We learned of the existence of that Policy only through the happenstance of petitioner's unearthing of it during the pendency of this appeal. Although the Attorney General argued before this Court that promulgating Policy # 09.821 is beyond the statutory authority of the Board, we reject the contention the Policy is unenforceable on that basis and therefore substantively invalid.[1] J.K. is free to submit materials in furtherance and support of his desire to relocate to Poland to the Board for review under its standards for continued Board supervision under Policy # 09.821, or regulations it may

---

[1] The Board has advised that it is prepared to adopt regulations in accordance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31, should its statutory authority position be rejected by this Court.

promulgate.  In light of the policy's statutory validity, we decline to reach J.K.'s constitutional claims, which he has acknowledged were raised for the first time in his petition for certification, as well as a newly raised argument about noncompliance with rulemaking procedures.

I.

In 2005, J.K. was convicted of attempting to lure or entice a minor into a vehicle, contrary to N.J.S.A. 2C:13-6.  The conviction resulted from a 2003 incident in which J.K. engaged in a sexually explicit online conversation with a child and attempted to lure the minor into his car with the intention of having sex.  J.K. was sentenced to three years of probation followed by CSL, imposed pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23.  He began serving CSL in 2008.  Since then, J.K. has otherwise followed the conditions of CSL but for a 2013 incident, in which he pleaded guilty to violating a condition of CSL; it was discovered he was in possession of internet-capable devices and was active on social media.  He was sentenced to thirty days in county jail.

In 2015, J.K. filed with the Parole Board a uniquely titled petition for "International Transfer of Community Supervision for Life," seeking to return to his home country of Poland.  In support, J.K. provided the Board with a certification of his Polish citizenship, copies of his Polish passport, a letter

4

from the Consulate General of Poland,[2] two uncertified letters from family members in Poland, and an uncertified letter from a prospective employer in Poland. The first family-member letter was from J.K.'s cousin, who indicated that she was fully aware of J.K.'s conviction, that J.K. could live with her, and that no minors lived at her residence. The second letter was from a different cousin, who stated that he would provide J.K. with any necessary social support. Finally, the prospective employer letter was from the owner of an agricultural facility in Poland and relayed an offer to employ J.K. The Board denied J.K.'s petition.

In an unpublished decision, the Appellate Division reversed the Board's denial and remanded the matter. The appellate court explained that recently, in J.S. v. State Parole Board, 452 N.J. Super. 1 (App. Div. 2017), a "near-identical matter" to this appeal, the Appellate Division reversed a decision by the Board. Applying J.S., the Appellate Division here reasoned that "the Board mistakenly interpreted J.K.'s application for transfer as a request for termination of CSL status." Accordingly, the appellate court held that because the Board "failed to consider whether [it] could supervise or monitor J.K.'s compliance with the conditions of CSL or impose special conditions if he was

---

[2] The letter from the Consulate General stated that Polish nationals "may not be forbidden to return to Poland" under Article 52 of the Polish Constitution.

5

permitted to relocate to Poland," the Board's denial of J.K.'s petition was arbitrary.

Following the Appellate Division's order, in an October 6, 2017 letter, the Board requested from J.K. an "up-to-date transfer application," and advised J.K.'s attorney that, "should a transfer application be submitted[,] the application should include a certification/affidavit of the party(ies) who intend to provide [J.K.] with a residence and by the employer/company that intends to offer [J.K.] employment." The Board also requested that J.K. explain how his supervision could be maintained, particularly in "such areas as reporting, change of residence, change of employment, counseling, urine monitoring, notification of an arrest and travel outside of Poland." The Board also asked for an English translation of any documents written in Polish.

On August 6, 2018, J.K. submitted a second transfer application, but that application was also found lacking. The following month, the Board alerted J.K. that his application was missing the requested documentation listed in its October 6, 2017 letter. The Board advised that

> [t]he documents attached as exhibits to [J.K.'s] petition [were] basically the same letters that were provided in 2015 and are not sufficient as a certification/affidavit. . . . [T]here is no attestation on the documents that the signatures are actually those of the person signing the respective document. . . . [T]he letter from the intended employer, who reports to be the owner of the company,

6

is not on formal letterhead of the named company. . . . The petition does not address who will provide such [sex offender] counseling . . . and whether the State Parole Board will be provided with periodic reports/evaluations. . . . The petition does not address who will provide urine monitoring; how same will be performed; what will happen if [J.K.] should test positive for substance use; whether a contested positive urine sample will be tested at a laboratory; and whether the State Parole Board will be informed of same.

As the petition focuses on why good cause exists to permit [J.K.] to transfer to the [R]epublic of Poland and does not address how [J.K.] intends to continue compliance with the conditions of supervision . . . the petition is deficient and will, therefore, not be presented for Board panel consideration until the deficiencies are addressed.

J.K.'s counsel responded to the Board's letter by requesting that J.K.'s application be submitted to the Board as is. J.K. refused to provide the requested material deemed necessary to the Board's review. Regarding the deficiencies that the Board had pointed out, counsel replied that the Board "did not indicate any legal authority requiring any particular documentation as legally necessary to support an international transfer of residence while subject to CSL." Accordingly, counsel would not provide the requested information, asserting that J.K.'s "application cannot be deficient in the absence of governing regulations and associated guidelines that stipulate the required contents of such an application."

7

On October 31, 2018, a two-member Board panel denied J.K.'s transfer application. J.K. filed an administrative appeal, and the Board affirmed the denial, finding that J.K. "provided the same arguments as noted [in his previous petition] and therefore, this appeal contains no information that was not previously considered." The Board determined that "the record is devoid of any information on which to assess the supervising or monitoring of [J.K.'s] compliance with the conditions of [CSL] or the imposition of special conditions if he was permitted to relocate to Poland."

J.K. appealed, arguing that the denial of his new application was arbitrary and capricious and that the denial of an international relocation request cannot be based on the destination country's ability or willingness to supervise. In a second unpublished opinion, the Appellate Division affirmed the Board's denial. The court briefly addressed J.K.'s arguments, finding them to be without sufficient merit to warrant extended discussion. The appellate court did note, however, that the Board may impose appropriate conditions on CSL individuals seeking international relocation and may ask such individuals to suggest appropriate conditions, which J.K. declined to do. In response to J.K.'s reliance on earlier appellate decisions, the court noted that the burden is on the person subject to CSL to show that "there would be sufficient monitoring or supervision while outside the jurisdiction." The Board may

8

impose appropriate conditions for "the protection of the public and for rehabilitation." The court noted that, similar to J.S., the Board requested information related to how J.K. would be able to be supervised in Poland, but "J.K. expressly refused to provide that information." Therefore, "the Board did not act arbitrarily, capriciously or unreasonably in denying J.K.'s application."

We granted J.K.'s petition for certification, 242 N.J. 508 (2020), which contends that the Appellate Division's decision conflicts with prior appellate decisions and raises constitutional claims related to the right to travel and substantive due process concerns.

II.

A.

In his petition, J.K. argues that a denial of a transfer of residence to another jurisdiction while subject to CSL cannot be based on the receiving jurisdiction's unwillingness or inability to supervise the relocating individual. He relies on Sanchez v. State Parole Board, 368 N.J. Super. 181, 184-85 (App. Div. 2004) (involving an application for interstate transfer of supervision of CSL to New York),[3] and J.S., 452 N.J. Super. at 6-7 (involving an application

_____

[3] This Court granted certification in Sanchez. 182 N.J. 140 (2004). However, the appeal was ultimately dismissed after the parties stipulated to the dismissal. 187 N.J. 487 (2006).

to relocate to Sweden, but not to terminate supervision by the New Jersey Parole Board). J.K. maintains he has a fundamental right as a dual citizen to relocate. He claims the Board's decision is arbitrary and capricious.

The Office of the Public Defender (OPD) supports J.K.'s argument that he has a fundamental right to relocate to Poland, and urges that the Board be required to promulgate objective standards for reviewing such requests.

The Board initially relied on its Appellate Division brief to support its position that its decision was not arbitrary or capricious due to J.K.'s failure to provide the requested documentation. Thereafter, in a brief responding to the OPD's argument, the Board, for the first time, argued that it was without statutory authority to promulgate regulations as proposed and contended that Sanchez and J.S. were wrongly decided.

### B.

Immediately prior to oral argument, J.K. brought to the Court's attention Board Policy # 09.821, which he noted was adopted by the Board. After argument in this matter, the Court issued an Order requesting additional briefing about the Policy that, on its face, was approved on March 25, 2020, by the Board's Chairman, and issued on April 13, 2020. Specifically, as our Order noted, in light of the new information about the Policy "that was not disclosed to the Court, as it should have been, and the shifting arguments by

10

the parties," the Court asked the Parole Board to brief the timeline and procedure by which the Policy was adopted; whether and how the Policy has been implemented, including whether it has been relied on in the review of other matters before the Board; whether the Board's statutory authority permits implementation of the Policy; and whether, in the absence of specific statutory authority, the Board may implement such a policy of continued supervision by the Board over CSL parolees, such as J.K., who have dual citizenship, to avoid violations of constitutional rights.

Following the submission of the Board's brief and the responsive briefs of J.K. and amicus OPD, the matter was re-argued. The Attorney General, on behalf of the Board, maintains that the Board lacked statutory authority to adopt Policy # 09.821, noting that there is no explicit authority for international relocations. In contrast, the Attorney General points to the express authorization for an interstate transfer of supervision of a parolee. Also, according to the Attorney General, granting an international transfer would be tantamount to terminating legislatively mandated supervision. In response, J.K. asserts that the Board has the statutory authority to approve relocation to another country where a parolee's citizenship is maintained, subject to continued supervision by the Board. He argues that had he known of the Policy's existence, he would not have raised broader constitutional

11

questions. That said, J.K. sought to raise a new procedural argument about the manner in which the Policy was adopted. The OPD continues to support J.K.'s position.

III.

We first address the newfound argument by the Attorney General, advanced on behalf of the Board, that the Board lacked statutory authority to adopt Policy # 09.821, whose existence, if lawful, would render most of this appeal unnecessary to address. The argument that the Attorney General advances at this stage of this appeal -- on behalf of an agency that determined to adopt the Policy -- is unusual.

We begin by reviewing the Board's enabling statute, the Parole Act of 1979, N.J.S.A. 30:4-123.45 to -123.76. The Act "created and established within the Department of Corrections" the Board. N.J.S.A. 30:4-123.47(a). The Act grants broad authority to the Board over parole supervision; specifically, the Act confers on the Board the authority to "promulgate reasonable rules and regulations . . . as may be necessary for the proper discharge of its responsibilities." N.J.S.A. 30:4-123.48(d). The responsibilities of the Board include imposing "specific conditions of parole." N.J.S.A. 30:4-123.59(b)(1).

12

In describing the types of conditions that the Board may impose, the Legislature did not enumerate an exclusive list, but rather provided that "[s]uch conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime." Ibid. (emphasis added). For purposes of statutory construction, we view legislative use of the words "include, among other things," ibid., as "term[s] of enlargement, not of limitation," Zorba Contractors, Inc. v. Hous. Auth. of Newark, 282 N.J. Super. 430, 434 (App. Div. 1995) (citing Norman J. Singer & J.D. Shambie Singer, 2A Sutherland on Statutory Construction § 47.07 (5th ed. 1992)). Accordingly, the Legislature's use of those terms here indicates that it did not intend to specify every permissible condition of parole that the Board may impose.

The Act also states that "[t]he appropriate board panel may in writing relieve a parolee of any parole conditions, and may permit a parolee to reside outside the State pursuant to the provisions of the Uniform Act for Out-of-State Parolee Supervision" (UAOPS).[4] N.J.S.A. 30:4-123.59(c).

Read as a whole, the Parole Act broadly allows the Board to impose and alter conditions of parole. We see no reason why the permanent residence of a

[4] In 2002, the Legislature entered the updated Interstate Compact for Adult Offender Supervision. N.J.S.A. 2A:168-26 to -39. That legislative determination does not change the analysis in this matter.

parolee may not be one of those conditions that may be imposed or altered by the Board -- so long as the Board determines it can adequately continue to supervise the parolee. No statutory impediment emerges from the Parole Act that denies the Board the ability to permit international relocation of a CSL parolee, such as J.K., who enjoys dual citizenship with another country, while maintaining Board supervision.

We are not persuaded by the argument that the Act's explicit grant of authority to the Board allowing for transfers of supervision of a parolee to another state, through the UAOPS, limits the Board's authority to impose and alter conditions of its own supervision of a CSL parolee who is permitted to reside out of state. See N.J.S.A. 30:4-123.59(c).

"We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). The plain language of N.J.S.A. 30:4-123.59(c) allows the Board to relieve a parolee of certain conditions "and" to permit interstate transfer. We do not share the view that the statute's permissive grant of authority should work to exclude international transfers; it merely makes express that the Board is authorized to permit interstate transfers of supervision under the uniform act.

The Criminal Code similarly recognizes the broad authority of the Board. At the time of J.K.'s offense, the CSL statute under which he was sentenced stated:

> The special sentence of community supervision required by this section shall commence upon completion of the sentence imposed pursuant to other applicable provisions of the Code of Criminal Justice. Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation.
>
> [N.J.S.A. 2C:43-6.4(b) (2003).]

Since 2003, CSL has been replaced by Parole Supervision for Life (PSL), but the statutory grant of authority to the Parole Board has remained equally broad. That statutory provision now reads that a person serving PSL

> shall be supervised by the Division of Parole of the State Parole Board, shall be subject to the provisions and conditions set forth in subsection c. of [N.J.S.A. 30:4-123.51b] and [N.J.S.A. 30:4-123.59 to .63, .65], and shall be subject to conditions appropriate to protect the public and foster rehabilitation. Such conditions may include the requirement that the person comply with the conditions set forth in subsection f. of this section concerning use of a computer or other device with access to the Internet or the conditions set forth in subsection g. of this section concerning the operation as defined in [N.J.S.A. 2C:40-27] of an unmanned aircraft system as defined in [that section].
>
> [N.J.S.A. 2C:43-6.4(b).]

15

The Criminal Code thus includes a scheme of statutorily required conditions, as well as unspecified conditions to be determined by the Board, that are "appropriate to protect the public and foster rehabilitation." Ibid. As is the case under the Act, the Criminal Code also broadly permits the imposition and alteration of conditions as the Board sees fit to fulfill its supervisory responsibilities to protect the public and foster rehabilitation. We decline to interpret the statutory grant of authority to the Board as insufficient to permit the Board to allow international relocation while retaining its supervision of a parolee, as it chose to do through the adoption of Policy # 09.821.

Further, we reject the contention that the language in the 2003 statute converting CSL to PSL -- according to which "[p]ersons serving a special sentence of community supervision shall be supervised as if on parole," N.J.S.A. 2C:43-6.4(b) (2003) -- prevents the Board from permitting an international transfer. The Board's argument assumes that J.K. is seeking to terminate supervision, which plainly under the language of N.J.S.A. 2C:43-6.4(c) may be permitted only by a court. Because CSL individuals "shall" be supervised by the Board, the Board does not have unilateral authority to terminate supervision. But that is not what J.K. requested. J.K. has only asked

16

to live in Poland, while remaining under the supervision of the Board. Such an arrangement would not conflict with N.J.S.A. 2C:43-6.4(c).

Finally, we note that the position now being advanced by the Attorney General, on behalf of the Board, is inconsistent with the Board's existing regulations. Under N.J.A.C. 10A:71-6.6(a), "[t]he appropriate Board panel or the Board may modify or vacate a condition of parole at any time for cause." Similar to our interpretation of the statutory language identified above, we see no reason why a modification of a condition of parole under the Board's regulations cannot include an international change of residence to a country in which the parolee maintains citizenship. Indeed, the Board has already promulgated regulations allowing for "an offender to travel outside of the United States of America." N.J.A.C. 10A:72-12.2 (emphasis added). Just as the Board argues that there is no affirmative language granting it the power to permit international relocations, there is no affirmative statutory language granting it the authority to permit international travel; yet, the Board has promulgated regulations as to the latter.

In sum, we reject the Attorney General's assertion that Policy # 09.821 is invalid because it is inconsistent with the Board's statutory authority. We turn next to the arguments originally advanced by J.K. challenging the Board's

17

denial of his application to relocate to Poland, which was affirmed by the Appellate Division.

IV.

A.

With respect to the Board's determination in this matter, our standard of review is a familiar one. "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011)).

J.K. relies on Sanchez, 368 N.J. Super. 181, to assert that the Board's decision was arbitrary and capricious. He argues that, under Sanchez, he has the right to leave New Jersey regardless of whether the receiving jurisdiction will supervise him.

In Sanchez, the Appellate Division addressed whether a person subject to CSL may move to another state if that state "refuses to accept supervision solely because of the Parole Board's lack of administrative enforcement powers," id. at 185, that is, because the Board "cannot return a CSL defendant to prison through the revocation hearing procedures applicable to ordinary parolees," id. at 184, and because "violation of a CSL condition is [instead]

18

only punishable as a crime," ibid. The defendants in Sanchez sought to move to New York. Id. at 185. The Board approved the requests, "subject to New York agreeing to supervise the appellants pursuant to UAOPS."[5] Ibid. But New York refused to supervise the defendants. Ibid.

The Appellate Division held that the Board "may permit CSL defendants to reside in another state in appropriate circumstances even if that state refuses supervision under UAOPS." Id. at 186. The Appellate Division observed that the primary purpose of Megan's Law is to protect New Jersey residents from recidivist sex offenders. Id. at 188. The court reasoned that, when the person resides outside of New Jersey, the purpose of protecting New Jersey citizens is no longer applicable, or is of lesser importance. Ibid. Thus, the court determined that, when a CSL defendant shows good cause to move, "[a]nother state's refusal to" accept supervision "provides an insufficient reason for keeping a CSL defendant here," and "[t]he spirit of the original Megan's Law is best served by interpreting it to permit CSL defendants who otherwise qualify for residency in another state under UAOPS to live in that state even if that state declines supervision." Ibid. The court noted, however, that in such cases, "the Parole Board may make the change in residency 'subject to

---

[5] Under the UAOPS, "other states may but are not required to accept supervision of CSL defendants." Sanchez, 368 N.J. Super. at 184.

19

conditions appropriate to protect the public and foster rehabilitation.'" Id. at 188-89 (quoting N.J.S.A. 2C:43-6.4(b)).  The Appellate Division remanded for further proceedings, which would allow the Board to assess whether and how it could supervise a CSL defendant, under the circumstances, and also whether New York's position had changed due to intervening events.  Id. at 188-89.

J.K. also relies on the Appellate Division decision in J.S.  In that matter, the CSL defendant sought to relocate to Sweden, but the Board denied his request. 452 N.J. Super. at 2.  The Appellate Division reversed and remanded because the Board had treated the defendant's petition as a request to terminate CSL and had thus failed to consider whether "it could supervise or monitor J.S.'s compliance with the conditions of CSL or impose special conditions."  Id. at 2-3.  The court found that "the level of actual supervision to which J.S. [was] subject [was] unclear," and, citing Sanchez, determined that "[i]t was error not to consider if appropriate supervision of J.S. could continue."  Id. at 6.  Thus, because the Board failed to consider whether any individualized conditions might be available and sufficient for supervision before denying J.S.'s petition to relocate, the Appellate Division concluded that the Board's decision denying J.S.'s application was arbitrary.  Id. at 7.

20

B.

Application of the appropriate appellate standard of review in this matter leads us to the same conclusion reached by the Appellate Division: "the Board did not act arbitrarily, capriciously or unreasonably in denying J.K.'s application." J.K. faults the Board, claiming that it failed to provide a statement of reasons for denying his relocation request. However, the Board quite clearly advised J.K. that his petition was "devoid of any information on which to assess the supervising or monitoring of [J.K.'s] compliance with" CSL. And, as the Appellate Division noted, J.K. declined "the opportunity to further support his application by providing the information sought by the Board." The rejection of J.K.'s inadequate submissions hardly constitutes arbitrary, capricious, or unreasonable agency action.

This case is unlike the two cases that J.K. says support his appeal. No analogy can be drawn to Sanchez, where New York had advised the Board that it would not provide any supervision. That case involved an actual transfer of supervision to another state jurisdiction; however, that is not what J.K. is asking for. He seeks to relocate to Poland where he would continue under the Board's supervision, yet he refused to provide adequate and reliable information as to how the Board might satisfactorily perform its CSL supervision after such a relocation.

21

This matter is also distinguishable from J.S.  In J.S., the Appellate Division remanded for the Board to consider the supervision that it might be able to conduct, notwithstanding J.S.'s relocation to a foreign jurisdiction, because the Board gave that no consideration.  Here, however, on remand, J.K. refused to provide for the Board's consideration the requested information on that very point.

We hold that the Appellate Division correctly affirmed the Board's rejection of the same application for relocation that J.K. submitted the second time around. J.K. made no effort to provide the Board with the additional information it reasonably deemed necessary to assess his request.  The Board's denial was not arbitrary, capricious, or unreasonable, and therefore that final agency action deserved affirmance on appellate review.  See Saccone, 219 N.J. at 380.

To the extent that J.K. has sought to have this Court note his belated efforts, casually mentioned at oral argument, to augment his original submission to the Board with certifications, notarized documents, and other more detailed information ostensibly responsive to the Board's needs in order to consider an application for relocation, we hew to our normal appellate role.  We treat the record as limited to that which was created before the agency whose decision is on appeal.[6]  R. 2:5-4(a).  J.K.'s appeal fails on account of the record he created before

---

[6]  We also do not address J.K.'s constitutional arguments because they were not raised before the Appellate Division and were therefore not preserved in the record.  See R. 2:6-2; :12-6 ("The record on petition for certification shall

22

the Board. The Board deemed the record on which J.K.'s application was based to be inadequate, and we readily conclude that that determination was not arbitrary, capricious, or unreasonable. J.K.'s recourse is to apply to the Board under the new policy it has adopted for such purposes and to present the enhanced and updated information that he claims will support his request to relocate to Poland while allowing the Board to fulfill its CSL supervisory responsibilities appropriately and according to the needs of his case.[7]

---

be the briefs, appendices and transcripts filed in the Appellate Division . . . ."). In the same way "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available," State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)), we decline to consider arguments J.K. failed to raise before either the Board or the Appellate Division. Indeed, we have recognized that if we allowed "late-blooming issues . . . to be raised for the first time on appeal, this would be an incentive for game-playing by counsel, for acquiescing through silence when risky rulings are made, and, when they can no longer be corrected at the trial level, unveiling them as new weapons on appeal." Id. at 19 (quoting Frank M. Coffin, On Appeal: Courts, Lawyering, and Judging 84-85 (1994)).

Additionally, because we hold that the Board has the authority to contemplate international relocations under its policy, we need not reach J.K.'s constitutional arguments because they are "not necessary to the disposition of the litigation." O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993). J.K. has an administrative path available to him, and it is up to him to comply with the policy and standards promulgated by the Board.

[7] To the extent that J.K. alluded to a procedural rulemaking argument concerning the Policy, we decline to address this newly raised point for a variety of reasons, not the least of which is that the Board now asserts that it intends to promulgate regulations in accordance with the APA. See supra at ___ n. 1 (slip op. at 3).

23

## V.

The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in the Court's opinion.